**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| CITIZENS FOR RESPONSIBILITY ) | |
| AND ETHICS IN WASHINGTON, ) | |
| ) | |
| *Plaintiff,* ) | Case No. 1:24-cv-01497-LLA |
| ) | |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF JUSTICE ) | |
| ) | |
| *Defendant.* ) | |
| _____ ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.  Statutory and Regulatory Framework...............................................................................2

II.  Procedural History.........................................................................................................4

LEGAL STANDARDS..........................................................................................................7

ARGUMENT ......................................................................................................................7

I.  To state a FOIA pattern or practice claim, Plaintiffs must allege facts showing a pattern
of persistent failure to follow FOIA's requirements. ..........................................................7

II.  Count II's claim that the varied responses from different DOJ components is the result of
an unlawful DOJ-wide policy or practice fails as a matter of law. ...................................11

    A.  Plaintiff cannot establish a pattern by grouping together FOIA responses
provided by four different DOJ components.........................................................11

    B.  Plaintiff has not plausibly alleged that the FOIA requests and responses
were sufficiently similar to demonstrate an unlawful pattern or rractice.............15

III.  Count III's claim that the FBI has an impermissible policy or practice of denying FOIA
requests for investigations of government officials on privacy grounds fails as a matter of
law. ................................................................................................................................18

CONCLUSION...................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Am. Ctr. for L. & Just. v. FBI,*
470 F. Supp. 3d 1 (D.D.C. 2020) ...................................................................................*passim*

*Am. Ctr. for L. & Just. v. U.S. Dep't of State,*
289 F. Supp. 3d 81 (D.D.C. 2018) ..............................................................................................8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................................7, 21

*Bartko v. U.S. Dep't of Just.,*
62 F. Supp. 3d 134 (D.D.C. 2014) ..............................................................................................16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................................................................7

*Charles v. United States,*
No. 21-cv-1983-BAH, 2022 WL 951242 (D.D.C. Mar. 30, 2022)...........................................3

*Chase v. U.S. Dep't of Just.,*
301 F. Supp. 3d 146 (D.D.C. 2018) ............................................................................................13

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.,*
746 F.3d 1082 (D.C. Cir. 2014) ...........................................................................................19, 20

*Competitive Enter. Inst. v. Nat'l Sec. Agency,*
78 F. Supp. 3d 45 (D.D.C. 2015) ................................................................................................16

*Davis v. U.S. Dep't of Just.,*
968 F.2d 1276 (D.C. Cir. 1992) ..................................................................................................20

*Davis v. World Sav. Bank, FSB,*
806 F. Supp. 2d 159 (D.D.C. 2011) ..............................................................................................7

*Doshi v. Blinken,*
No. 23-cv-3613-RC, 2024 WL 3509486 (D.D.C. July 22, 2024).............................................6

*Hawkins v. FBI,*
No. 20-cv-1483-BAH, 2022 WL 905577 (D.D.C. Mar. 2, 2022) ...........................................13

*Judicial Watch, Inc., v. U.S. Dep't of Homeland Sec.,*
895 F.3d 770 (D.C. Cir. 2018).............................................................................................*passim*

*Khan v. U.S. Dep't of Homeland Sec.,*
No. 22-cv-2480-TJK, 2023 WL 6215359 (D.D.C. Sept. 25, 2023)............................ 12, 14, 15

*Kimberlin v. U.S. Dep't of Just.*,
   139 F.3d 944 (D.C. Cir. 1998)........................................................................20

*Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*,
   540 F. Supp. 2d 231 (D.D.C. 2008) ................................................................5

*Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs*,
   369 F. Supp. 3d 151 (D.D.C. 2019) .......................................................15, 16

*Muttitt v. Dep't of State*,
   926 F. Supp. 2d 284 (D.D.C. 2013) ..........................................................8, 21

*Muttitt v. U.S. Cent. Command*,
   813 F. Supp. 2d 221 (D.D.C. 2011) ...................................................12, 14, 15

*Nat. Res. Def. Council, Inc. v. EPA*,
   383 F. Supp. 3d 1 (D.D.C. 2019) ................................................................11

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) ....................................................................................19

*Payne Enters., Inc. v. United States*,
   837 F.2d 486 (D.C. Cir. 1988)........................................................7, 8, 9, 21

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) ................................................................5

*Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*,
   78 F.4th 436 (D.C. Cir. 2023)....................................................................12, 13

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007)........................................................................16

*Wright v. U.S. Dep't of Just.*,
   No. 14-cv-558-ESH, 2015 WL 1153372 (D.D.C. Mar. 16, 2015) .........................20

**Statutes**

5 U.S.C. § 552..............................................................................................2, 3, 21

**Rules**

Federal Rule of Civil Procedure 12(b)(6)...............................................................2, 18

**Regulations**

6 C.F.R. § 5.1(c)..............................................................................................14

28 C.F.R. § 16.1 ......................................................................................3, 12, 14

iii

28 C.F.R. § 16.3 ..................................................................................................................3

28 C.F.R. § 16.4 ..........................................................................................................3, 4, 12

28 C.F.R. § 16.6 ..................................................................................................................4

28 C.F.R. § 16.8 ..................................................................................................................4

**Other Authorities**

About the Office of Information Policy,
    https://www.justice.gov/oip/about-office (updated Dec. 22, 2022).......................................14

Off. of Info. Policy, DOJ Reference Guide: Attachment B, *available at*
    https://www.justice.gov/oip/doj-reference-guide-attachment-b-listing-and-descriptions-
    department-of-justice-components-foia (updated Dec. 22, 2022).................................................3

## INTRODUCTION

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), claims that the United States Department of Justice ("DOJ") has two practices that violate the Freedom of Information Act ("FOIA"): (1) refusing to confirm or deny the existence of records responsive to requests about publicly-disclosed investigations (known as a Glomar response), Compl., ¶¶ 42-45, ECF No. 1, Count II, and (2) categorically denying requests for records of investigations of government officials under FOIA's Exemptions 6 and 7(C) without conducting any case-by-case balancing of the public and private interests at stake. Compl. ¶¶ 46-51, Count III. The allegations in Plaintiff's complaint, however, fall far short of the facts that would be necessary to render their "policy or practice" claims plausible, and they should therefore be dismissed for failure to state a claim.

In Count II, Plaintiff relies on six separate FOIA responses it has received over the last several years from four different components of DOJ—the Criminal Division, the Executive Office of United States Attorneys ("EOUSA"), the Office of Information Policy ("OIP"), and the Federal Bureau of Investigation ("FBI")—for the alleged practice. Compl. ¶ 43. But DOJ maintains a decentralized process for FOIA requests, with each DOJ component handling its own responses to FOIA requests and maintaining its own practices for responding to FOIA requests. Thus, for purposes of FOIA, each DOJ component is analogous to a separate "agency" against which a policy or practice claim could be asserted. Plaintiff points to only one or two allegedly unlawful FOIA responses per DOJ component as evidence of a DOJ-wide unlawful practice, but each component's practices should instead be evaluated independently. Pleading only one or two instances of allegedly unlawful conduct per DOJ component is insufficient as a matter of law to establish a practice of unlawful agency conduct. Additionally, those six FOIA requests share little in common. The requests address different topics, involve different circumstances, and the

components handled the requests in materially different ways, belying any inference that these responses constitute a pattern.

In Count III, the perpetrator of the alleged practice is only the FBI, but the three requests that Plaintiff relies on once again reveal different requests, covering disparate topics, and the FBI's responses were far from uniform. Plaintiff's complaint makes no attempt to stitch together these disparate threads into a pattern or practice.

At bottom, all Plaintiff has alleged is that, because it has received slightly similar responses from different DOJ components in response to very different FOIA requests, the entire DOJ writ large somehow has a policy or practice of violating FOIA. The case law in the D.C. Circuit and the requirements of Federal Rule of Civil Procedure 12(b)(6) demand more. Accordingly, the Court should dismiss Counts II and III of the complaint.

## BACKGROUND

### I.    Statutory and Regulatory Framework

FOIA provides a means for public access to agency records, subject to certain statutory exemptions. *See* 5 U.S.C. § 552. Upon receipt of a properly submitted request that "reasonably describes" the records sought, *id*. § 552(a)(3)(A), an agency generally must determine within twenty days "whether to comply with such request" and then immediately notify the requester of its determination and the reasons therefor, *id*. § 552(a)(6)(A)(i).[1] The statute provides that if an agency fails to make a determination within twenty days and immediately notify the requester, the requester "shall be deemed to have exhausted his administrative remedies with respect to such request" and a court may exercise or retain jurisdiction over an underlying FOIA claim. *Id*. § 552(a)(6)(C)(i).

---

[1] FOIA permits an agency to extend this twenty-day deadline by no more than ten days in "unusual circumstances." *Id*. § 552(a)(6)(B)(i).

FOIA requires agencies to develop "methods whereby[ ] the public may obtain information, make submittals or requests, or obtain decisions" under the statute and publish these procedures in the Federal Register "for the guidance of the public[.]" 5 U.S.C. § 552(a)(1)(A); *see also* 28 C.F.R. § 16.1, *et seq*. DOJ's system for responding to FOIA requests is "decentralized," with individual components[2] "designating a FOIA office to process records from that component," to which "a requester [may] write directly" to request records maintained by the DOJ component. 28 C.F.R. § 16.3(a)(1); *see also Charles v. United States*, No. 21-cv-1983-BAH, 2022 WL 951242, at *5 (D.D.C. Mar. 30, 2022) (describing DOJ's decentralized process). When a component receives a FOIA request, that component is "responsible for responding to the request." 28 C.F.R. § 16.4(a). "The head of a component, or designee, is authorized to grant or to deny any requests for records that are maintained by that component." *Id*. § 16.4(b). "Where a component's FOIA office determines that a request was misdirected within the Department, the receiving component's FOIA office shall route the request to the FOIA office of the proper component(s)." *Id*. § 16.4(c). When a component of DOJ believes that a different component, agency, or other Federal Government office is best able to determine whether to disclose the record, or when the records contain information of interest to another component, agency, or other Federal Government office, the component may consult with or refer the request to the appropriate entity. *Id*. § 16.4(d).

Each component maintains their own, publicly available, practices for processing FOIA requests. For example, some components maintain a two-track processing system, while others maintain a three-track processing system. *See* Off. of Info. Policy, DOJ Reference Guide: Attachment B, *available at* https://www.justice.gov/oip/doj-reference-guide-attachment-b-listing-

---

[2] "[C]omponent means each separate bureau, office, division, commission, service, center, or administration that is designated by the Department as a primary organizational entity." 28 C.F.R. § 16.1(c).

and-descriptions-department-justice-components-foia (updated Dec. 22, 2022) ("DOJ Reference Guide: Attachment B") (compare Office of the Attorney General's three-track system with Bureau of Alcohol Tobacco and Firearms' two-track system). And some components request additional, specific information to assist the component in responding to the FOIA request. *Id*. (for example, Civil Division's special considerations specify that "[r]equests for records from Civil Division case files should include a case caption or name, civil action number, judicial district, and date or year of filing").

When a component denies a FOIA request, the component is required to notify the requester in writing and provide an explanation of the grounds for the denial. 28 C.F.R. § 16.6(d). A requester may appeal any adverse determinations to OIP. 28 C.F.R. § 16.8(a).

## II.    Procedural History

On May 21, 2024, Plaintiff filed the instant complaint. ECF No 1. Plaintiff claims to be a non-profit, non-partisan organization that is "committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring the integrity of government officials and agencies." Compl. ¶ 6. Plaintiff allegedly "uses government records it obtains under FOIA" and is a "repeat requester" of records under FOIA. *Id*. ¶¶ 6-7.

The complaint is based on FOIA requests submitted by Plaintiff to four different components of DOJ. Count II alleges that "[c]omponents of the DOJ—including but not limited to the Criminal Division, the Executive Office of United States Attorneys, the Office of Information Policy, and the FBI—have adopted and are engaged in a policy and practice of violating FOIA by issuing *Glomar* responses" — a response that refuses to confirm or deny the existence of records — "to CREW simply because a FOIA request seeks records relating to an investigation of a third party, even when that investigation has been publicly disclosed." Compl. ¶ 43. In support of this claim, Plaintiff relies on six separate FOIA requests:

- February 2021 FOIA request to EOUSA for records relating former New York City mayor Rudy Giuliani. *See* Def.'s Ex. 1.[3]

- February 2021 FOIA request to OIP for records relating to former New York City mayor Rudy Giuliani. *See* Def.'s Ex. 2.

- March 2022 FOIA request to Criminal Division for records relating to former Secretary of the Interior Ryan Zinke. *See* Def.'s Ex. 3

- April 2023 FOIA request to Criminal Division for records relating to Tennessee State Senator Brian Kelsey. *See* Def.'s Ex. 4.

- April 2024 FOIA request to EOUSA for records relating to Assistant United States Attorney Terra Morehead. *See* Def.'s Ex. 5.

- September 2022 FOIA request to FBI for records relating to former Pennsylvania State Senator Doug Mastriano. *See* ECF No. 1-15, Pl.'s Ex. K.

Plaintiff received FOIA responses to each of these requests. *See* ECF Nos. 1-9 – 1-14, Pl.'s Exs. E-J. As relief for Count II, Plaintiff seeks both declaratory relief and a permanent injunction prohibiting DOJ from engaging in the allegedly unlawful practice of issuing "improper *Glomar* responses for requests for records relating to publicly-disclosed investigations." Compl. 12, Requested Relief, (3)-(4).

In Count III, Plaintiff brings a second "policy or practice" claim, this time based only on FOIA responses it has received from the FBI. Count III alleges that "[c]omponents of the DOJ— including but not limited to the FBI—have adopted and are engaged in a policy and practice of

---

[3] Plaintiff only attached the FOIA responses that it received to the complaint but did not attach most of the underlying FOIA requests themselves. Thus, Defendant attaches as exhibits the underlying FOIA requests that Plaintiff references in the complaint. In evaluating the sufficiency of the complaint, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011); *see also Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008) (documents referenced in the complaint deemed to be incorporated).

violating FOIA, by categorically denying CREW's FOIA requests for records of investigations of government officials without conducting any case-by-case balancing of the public and private interests at stake." Compl. ¶ 47. In support of this claim, Plaintiff relies on three FOIA requests, all submitted to the FBI:

- September 2022 request to Department of Interior, which was referred to FBI, for records relating to former Secretary of the Interior Ryan Zinke. *See* Def.'s Ex. 6.

- October 2022 request to FBI for records relating to former Arizona State Senator Mark Finchem. *See* Def.'s Ex. 7.

- February 2023 FOIA request to FBI for records relating to U.S. Congressman Matt Gaetz. *See* ECF No. 1-5, Pl.'s Ex. A.

CREW received FOIA responses to each of these requests. *See* ECF Nos. 1-7, 1-16, 1-17, Pl's. Exs. C, L, M. As relief for Count III, Plaintiff seeks both declaratory and injunctive relief prohibiting the Department of Justice from engaging in "an impermissible policy and practice of categorically denying requests for acknowledged records of publicly-disclosed investigations of government officials under Exemptions 6 and 7(C), without conducting any case-by-case balancing of the public and private interests at stake and without attempting to segregate and release any non-exempt information." Compl. 12, Requested Relief, (5)-(6). Plaintiff also asks this Court to award it costs and attorney's fees. *Id*. Requested Relief, (9).

The complaint also includes a challenge to the FBI and Criminal Division's handling of a particular FOIA request—CREW's request for records from the FBI and Criminal Division about an investigation into Congressman Matt Gaetz. Compl., ¶¶ 36-41, Count I; ECF Nos. 1-5, 1-6, 1-7, Pl.'s Exs. A-C; Def.'s Ex. 8. DOJ does not seek to dismiss that claim in this motion.[4]

---

[4] Defendant's deadline to respond to Count I runs from the date of the Court's action on this motion. *See Doshi v. Blinken*, No. 23-cv-3613-RC, 2024 WL 3509486 (D.D.C. July 22, 2024) (colleting cases).

## LEGAL STANDARDS

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this plausibility standard when the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Twombly*, 550 U.S. at 557). Moreover, although courts are to presume the truth of all factual allegations in the complaint, they need not and should not accept "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (brackets in original). Similarly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. "Further, 'when the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail.'" *Davis v. World Sav. Bank, FSB*, 806 F. Supp. 2d 159, 172 (D.D.C. 2011) (citation omitted).

## ARGUMENT

**I.    To state a FOIA pattern or practice claim, Plaintiffs must allege facts showing a pattern of persistent failure to follow FOIA's requirements.**

A "policy or practice" claim under FOIA, sometimes referred to as a "pattern or practice" claim, is a narrow exception to the principle that FOIA lawsuits must be litigated based on individual FOIA claims, and that such claims are moot once the requested documents are provided. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490-91, 494 (D.C. Cir. 1988). Generally, "once all requested records are surrendered" in response to a FOIA request, "'federal courts have

no further statutory function to perform' with respect to the particular records that were requested." *Id*. at 490-91 (citation omitted). The rule is different only if a plaintiff has alleged "facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne Enters*., 837 F.2d at 491). To plead a valid claim for "equitable relief, a plaintiff must show that the agency (1) repeatedly violates FOIA through a (2) policy or practice that is (3) 'sufficiently outrageous.'" *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018) (citation omitted).

Here, Plaintiff does not base its claims on any formal DOJ policy or regulation, but rather on a pattern of responses to FOIA requests. Although paragraph 33 of the complaint quotes from a slide in a PowerPoint training presentation posted on DOJ's website, the complaint contains no other facts suggesting that this slide constitutes a DOJ policy. *See* Compl. ¶ 33 ("'Generally, an agency can issue a Glomar response or categorical denial without first conducting a search. If a Glomar response or categorical denial are not appropriate, the agency generally needs to search for and process responsive records.'") (quoting Dep't of Just., Advanced Considerations Exemptions 6 & 7(C) at 28 (May 2020) *available at* https://www.justice.gov/d9/2023-03/exemptions_6_and_7c_advanced_-_january_2023.pdf)). Rather, Counts II and III are predicated on Glomar responses to CREW's FOIA requests issued by various DOJ components (for Count II), *see* Compl. ¶ 43, and the FBI's alleged categorical denial responses to CREW's FOIA requests for records of investigation of government officials (for Count III), *see* Compl. ¶¶ 47-49—that is, a pattern or practice, not a policy. In such a case, "[t]he key question is whether [the] complaint alleges sufficient facts . . . to allow 'the reasonable inference that the [agency] has adopted'—formally or informally—" a pattern of persistent failure to adhere to FOIA's

requirements, or whether the complaint alleges "merely isolated mistakes by agency officials." *See Am. Ctr. for L. & Just. v. FBI* ("*ACLJ*"), 470 F. Supp. 3d 1, 6 (D.D.C. 2020) (quoting *Judicial Watch, Inc., v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018) and *Payne*, 837 F.2d at 491).

The facts of *Payne Enterprises* illustrate the high bar a plaintiff must clear in establishing a pattern or practice claim. There, for almost two years, officers at Air Force Logistics Command ("AFLC") bases "refused to fulfill Payne's requests for copies of bid abstracts when there was limited competition for a contract," even though the Secretary of the Air Force had determined that "no FOIA exemption applied." *Payne Enters.*, 837 F.2d at 494. The officers were admonished by the Secretary's Office, but no firm action was taken to end their recalcitrance. *See id.* Thus, "[t]he Secretary's inability to deal with AFLC officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offer[ed] no justification, entitle[d] Payne to declaratory relief." *Id.*

The D.C. Circuit's more recent decision in *Judicial Watch, Inc. v. United States Department of Homeland Security*, 895 F.3d at 770, similarly emphasized the degree to which a pattern or practice claim is viable only in the wake of repeated conduct that raises serious concerns. There, a divided panel of the court held that "a plaintiff states a plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records . . . and that the pattern of delay will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future." *Id*. at 780.

At issue in *Judicial Watch* were numerous requests to the Secret Service for records on the use of government funds for "VIP" travel. *See id.* at 773. Specifically, the complaint described "nineteen travel-related FOIA requests submitted over a thirteen-month period," for which the

Secret Service had not produced the requested records. *Id*. at 773-74. The plaintiff filed suit concerning those nineteen requests after it had already filed five separate lawsuits, over a three-year period, seeking very similar records. *See id.* at 773. In reaching the conclusion that the plaintiff had plausibly alleged a pattern or practice claim, the court applied a fact-specific analysis, highlighting that "Judicial Watch's complaint reflects that it has repeatedly been confronted with prolonged, unexplained delays[.]" *Id*. at 780; *see also id.* at 782 (describing "[t]he Secret Service's alleged practice of prolonged, repeated, and unexplained delay"). In particular, the D.C. Circuit noted two ways in which the Secret Service's handling of the plaintiff's FOIA requests followed a clear pattern. First, the agency consistently "employed the same non-responsive conduct"—*i.e.*, it would acknowledge receipt of a request, assign a tracking number, but "remain mute until Judicial Watch filed a lawsuit[.]" *Id.* at 779; *see also id.* at 780-81 (holding that "Judicial Watch alleges sufficient facts . . . to 'draw the reasonable inference' that the Secret Service has adopted a practice of delay . . . by repeatedly standing mute over a prolonged period of time" (citation omitted)). Second, the "six lawsuits to obtain requested non-exempt records . . . all relat[ed] to the same subject matter[,]" *i.e.*, VIP travel. *Id*. at 782; *see also id*. at 787 (Pillard, J., concurring) ("With allegations of 29 similar requests across six lawsuits met by unexplained months of waiting for the Secret Service to produce responsive records, the complaint makes out a consistent practice of delay in violation of FOIA."). Not only were the requests similar, they were also relatively straightforward to process. *See id.* at 784 (rejecting suggestion that "Judicial Watch's requests were 'complex'"); *id*. at 788 (Pillard, J., concurring) (adopting an "inference in Judicial Watch's favor that its VIP-travel expense requests are wholly straightforward").

District courts applying the standard set in *Payne* and *Judicial Watch* have looked to those same two factors—(1) whether the agency processed (or failed to process) the requests in a similar

manner, and (2) whether the requests themselves are similar—in assessing FOIA pattern or practice claims. *ACLJ*, 470 F. Supp. 3d at 6-7 (analyzing similarity of requests and similarity of responses and finding that three "strikingly different" requests and "variation in the three" responses failed to adequately allege policy or practice claim); *see also Nat. Res. Def. Council, Inc. v. EPA*, 383 F. Supp. 3d 1, 13 (D.D.C. 2019) (explaining that "to bring a policy or practice claim under *Payne*, a plaintiff 'must allege a [policy or practice] amounting to a persistent failure to adhere to FOIA's requirements'" (quoting *Judicial Watch*, 895 F.3d at 780)).

## II. Count II's claim that the varied responses from different DOJ components is the result of an unlawful DOJ-wide policy or practice fails as a matter of law.

Count II fails to state a FOIA pattern or practice claim because it relies on varied responses to CREW's FOIA requests, issued by multiple different DOJ components. Each DOJ component handles their own FOIA requests, each individual FOIA request Plaintiff relies on presented its own unique circumstances, and each FOIA request received its own fact-specific and unique response. That does not make a cognizable pattern or practice.

### A. Plaintiff cannot establish a pattern by grouping together FOIA responses provided by four different DOJ components.

Plaintiff bases its pattern or practice claim in Count II on six FOIA responses that it has received, over a period of more than three years, from four different DOJ components. Implicit in Plaintiffs' theory is that the responses from each individual component should be grouped together and evaluated collectively, to form a pattern from six different data points. However, Plaintiff's theory fails to state a claim as a matter of law because each DOJ component is individually responsible for processing and responding to its own FOIA requests and maintains its own practices and records systems for responding to those requests. Because DOJ components each use their own practices for reviewing and responding to FOIA requests, each component is therefore, in effect, analogous to a separate agency for purposes of its FOIA practices. And FOIA pattern or

practice claims cannot be pled by alleging conduct across multiple agencies. *See Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 230 (D.D.C. 2011) (analyzing pattern-and-practice claims by agency, not wholesale, and dismissing claims as against one defendant but not another); *Khan v. U.S. Dep't of Homeland Sec.*, No. 22-cv-2480-TJK, 2023 WL 6215359, at *6 (D.D.C. Sept. 25, 2023) ("Plaintiffs offer no factual allegations that support the existence of any pattern or practice as to any particular [agency].").

DOJ's FOIA regulations, which Plaintiff does not challenge, clearly explain that DOJ "has a decentralized system for processing requests, with each component handling requests for its records." 28 C.F.R. § 16.1(c). "[I]n light of DOJ's 'decentralized system'" FOIA requests should be made directly to the component that maintains the records being sought. *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 447 (D.C. Cir. 2023) (describing "decentralized" process). The head of a DOJ component, or designee, is authorized to grant or to deny any requests for records that are maintained by that component. 28 C.F.R. § 16.4. The regulations do not instruct components to coordinate their responses or otherwise collaborate in responding to FOIA requests. If one component receives a FOIA request that it determines has been misdirected, it may route that request to the proper DOJ component, but that is the extent of collaboration contemplated by DOJ's regulations. *See Watkins Law & Advoc.*, 78 F.4th at 447. Indeed, DOJ's FOIA regulations, in addressing FOIA consultations and referrals, discuss DOJ components as if they were another "agency[] or other Federal Government office." 28 C.F.R. § 16.4(d). And, seemingly recognizing the decentralized nature of DOJ and independence of each DOJ component when it comes to FOIA requests and responses, Plaintiff submitted each of its FOIA requests directly to the individual components, not to DOJ writ-large. *See* Def.'s Exs., 1-5, ECF No. 1-15, Pl.'s Ex. K.

Courts reviewing DOJ's regulations and practices have repeatedly recognized the autonomy that each individual DOJ component has in responding to FOIA requests and have treated each component as a separate "agency" for purposes of FOIA. *See, e.g., Chase v. U.S. Dep't of Just.*, 301 F. Supp. 3d 146, 154 (D.D.C. 2018) (explaining that, in case where EOUSA referred records responsive to FOIA request to the FBI, this was not a case "where one *agency* has attempted to pass off its FOIA responsibilities" but rather, "[a]s the originating *agency*" the FBI could properly review the records") (emphasis added). And in *Watkins Law and Advocacy PLLC v. United States Department of Justice*, the D.C. Circuit held that OIP had acted reasonably when it did not treat a request addressed to the Office of the Attorney General to seek documents that were within the possession of the Office of Legislative Affairs. 78 F.4th at 447. The Court held, "in light of DOJ's regulations mandating that requests for DOJ components be sent directly to the FOIA office of the component whose records are sought, nothing in the circumstances of this case required that the search extend beyond the Office of the Attorney General's records to encompass the records of another component." *Id.*; *see also Hawkins v. FBI*, No. 20-cv-1483-BAH, 2022 WL 905577, at *5 (D.D.C. Mar. 2, 2022) ("As the recipient of plaintiff's FOIA request, EOUSA was responsible for releasing non-exempt records in its possession at the time of submission.").

So too here: each individual DOJ component, not the DOJ writ large, is responsible for responding to FOIA requests, and each component maintains its own policies and practices for responding to such requests. *See* DOJ Reference Guide: Attachment B. Under the terms of DOJ's FOIA regulations, each DOJ component could be considered a separate "agency" to which a pattern or practice may be attributed. *See Chase*, 301 F. Supp. 3d at 155 (referring to FBI and EOUSA as "agency" within meaning of FOIA). Indeed, a ruling to the contrary would be in tension with DOJ's FOIA regulations and would implicitly impose an obligation that all DOJ components

coordinate and maintain uniformity in their practices for responding to FOIA requests—something that is clearly not contemplated by the applicable regulations. *See* 28 C.F.R. §§ 16.1, 16.4(a)(2)(i).[5] Nor is that something that DOJ's OIP does. Its role is, *inter alia*, to promote government-wide compliance with FOIA, provide legal counsel and training to agency personnel, and discharge the Department's administrative and policy responsibilities under FOIA. *See* About the Office of Information Policy, https://www.justice.gov/oip/about-office (updated Dec. 22, 2022). That is a far cry from coordinating individual DOJ components' FOIA responses to make sure they comply with FOIA caselaw, which is what is at issue here.

When viewed within this proper context, Plaintiff does not allege a pattern of six, but rather four separate patterns, each consisting of only one or two FOIA responses (*see* ECF Nos. 1-9, 1-10, Pl.'s Exs. E & F (FOIA responses from EOUSA); ECF No. 1-11, Pl.'s Ex. G (FOIA response from OIP); ECF Nos. 1-12, 1-13, Pl.'s Exs. H & I (FOIA responses from Criminal Division); ECF No. 1-14, Pl.'s Ex. J (FOIA response from FBI). This fails to state a claim as a matter of law.

The FOIA responses from the FBI and OIP fail to establish a pattern or practice of violating FOIA because courts in this circuit have squarely rejected pattern or practice claims based on only a single instance of violating FOIA. *Muttitt*, 813 F. Supp. 2d at 231 (An "allegation of a single FOIA violation is insufficient as a matter of law to state a claim for relief based on a policy, pattern, or practice of violating FOIA.").

The FOIA responses from EOUSA and Criminal Division, with two responses from each component, fare no better. *See Khan*, 2023 WL 6215359, at *7 (holding that two instances of improper handling of requests reflected "'merely isolated mistakes by agency officials,' which are

---

[5] The Department of Justice is not the only federal agency with a decentralized process for handling FOIA requests. The Department of Homeland Security maintains a similar decentralized process. *see* 6 C.F.R. § 5.1(c).

not enough to state a claim."). No court in this circuit has ever held that just two allegedly unlawful FOIA responses are sufficient to plead a pattern or practice claim. *See ACLJ*, 470 F. Supp. 3d at 7 (three instances insufficient for a pattern); *c.f., Judicial Watch*, 895 F.3d at 773 (19 instances established a pattern); *Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151, 159–60 (D.D.C. 2019) (claim involved "undisputed evidence of five instances"); *Muttitt*, 813 F. Supp. 2d at 230 (finding pattern based on "ten requests . . . that did not receive an adequate response"). And for good reason. A mere two instances of allegedly unlawful FOIA responses from an individual component cannot establish that it is plausible, instead of merely theoretically possible, that there is an unlawful practice amounting to a "persistent failure to adhere to FOIA's requirements[.]" *Khan*, 2023 WL 6215359, at *7.

### B. Plaintiff has not plausibly alleged that the FOIA requests and responses were sufficiently similar to demonstrate an unlawful pattern or practice.

Plaintiff characterizes the unlawful practice it challenges in Count II as a practice of violating FOIA "by issuing *Glomar* responses to CREW simply because a FOIA request seeks records relating to an investigation of a third party, even when that investigation has been publicly disclosed." Compl. ¶ 43. But even if the Court were to look at all six requests and responses at issue in Count II in the aggregate, which it should not do as explained above, Plaintiff has failed to adequately plead that the requests and responses are sufficiently similar to establish an unlawful pattern or practice. *See ACLJ*, 470 F. Supp. 3d at 6.

Plaintiff has not alleged that the FOIA requests "all relat[e] to the same subject matter." *Judicial Watch*, 895 F.3d at 782. The closer the subject matter of the requests, the more plausible it is that they were handled in the same way, so as to amount to a pattern or practice. "[T]he similarity of the underlying requests is a factor courts take into consideration, as it suggests that the agency's behavior stems from a considered decision (for example, the applicability of a

particular exemption to a particular category of documents) rather than isolated mistakes." *ACLJ*, 470 F. Supp. 3d at 6; *see also, e.g., Mo. Coal. for the Env't*, 369 F. Supp. 3d at 159-60 (highlighting "five instances" where the defendant agency "improperly withheld the same types of documents . . . based on the same improper application of Exemption 5").

The requests here have material differences. Although all share the high-level commonality of seeking information pertaining to third parties, that is where the similarity ends. They involve four different individuals and seek documents relating to completely different investigations— from an Assistant United States Attorney (Def.'s Ex. 5; ECF No. 1-9, Pl.'s Ex. E), to a former cabinet secretary (Def.'s Exs. 3; Pl.'s Ex. I), a former mayor (Def.'s Exs. 1, 2; ECF Nos. 1-10, 1-11, Pl.'s Exs. F, G), and two former state senators (Def.'s Ex. 4; ECF Nos. 1-12, 1-14, Pl.'s Exs. H, J). Some of the requests make no attempt to establish that the investigation at issue has been publicly disclosed such that a Glomar response would be inappropriate, a burden that is on the FOIA requester. *See Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) ("a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain"). For example, neither of the requests relating to Rudy Giuliani cite to any sources that would support a conclusion that any investigation had been publicly disclosed in a manner that would be sufficient to overcome a Glomar response under D.C. Circuit law. *See, e.g., Bartko v. U.S. Dep't of Just.*, 62 F. Supp. 3d 134, 143 (D.D.C. 2014) ("[A]n individual's privacy interest is not extinguished merely because the media reports or the public speculates that the individual may have been the subject of an investigation."); *Competitive Enter. Inst. v. Nat'l Sec. Agency*, 78 F. Supp. 3d 45, 54 (D.D.C. 2015) (official acknowledgement by government needed to waive agency's ability to make a Glomar response); *Wolf*, 473 F.3d at 378 (same). Plaintiff's FOIA requests relating to Rudy Guiliani cite a single article that offers only speculation as to the

existence of any investigation, and specifically include statements from the subject of the investigation refusing to comment or confirm any investigation. *See* Def.'s Ex. 2 (citing Ben Protess and William K. Rashbaum, *Trump Justice Department Sought to Block Search of Giuliani Records*, N.Y. Times (Feb. 10, 2021), https://www.nytimes.com/2021/02/10/nyregion/giuliani-trump-subpoena.html?referringSource=arti ("Mr. Giuliani has denied any wrongdoing. His lawyer, Robert J. Costello, declined on Wednesday to comment 'on media speculation.'").

The individual components' responses to these FOIA requests are also materially different, undermining any claim that the responses represent a uniform practice. Although Plaintiff characterizes all six responses as providing a Glomar response, two of the responses, the one relating to Assistant United States Attorney Morehead, and the one relating to former Secretary Zinke, are not Glomar responses at all, but instead rely on FOIA Exemptions 6 and 7(C) to withhold responsive documents. *See* ECF No. 1-9, Pl.'s Ex. E; ECF No. 1-13, Pl.'s Ex. I. These allegations do not support a reasonable inference that DOJ has "employed the same non-responsive conduct" in handling CREW's requests. *Judicial Watch*, 895 F.3d at 779.

To that end, Plaintiff's complaint does not even allege that the six examples it cites in the complaint are a representative sample. There are no allegations about how many similar FOIA requests CREW has submitted to DOJ, and there are no non-conclusory allegations that speak to whether the pattern or practice applies only to the referenced FOIA requests or to others as well. If the FOIA requests at issue here are the only similar requests CREW has ever sent to DOJ, then the handling of those requests is more probative of the agency's practices than if they are simply a few of many. But if CREW has submitted numerous requests to which it has received varied responses, then the handling of the disparate requests at issue here would actually demonstrate a *lack* of any pattern or practice. And again, although an allegation about representativeness may

not be required to state a pattern or practice claim, the absence of any such allegation renders the claim less plausible.

In sum, Plaintiff has not plausibly alleged that DOJ has a specific, unlawful pattern or practice with respect to issuing Glomar responses. Instead, it has claimed that DOJ failed to comply with FOIA on six separate, dissimilar occasions, and it has applied the pattern or practice label to those facts. But that approach—applying a bare legal conclusion to facts that do not otherwise state a facially plausible claim to relief—cannot survive a Rule 12(b)(6) motion to dismiss. Accordingly, Plaintiff's "policy or practice" claim in Count II should be dismissed.

### III. Count III's claim that the FBI has an impermissible policy or practice of denying FOIA requests for investigations of government officials on privacy grounds fails as a matter of law.

Plaintiff's Count III claim fails for many of the same reasons as its Count II claim. Although Count III only involves one component of DOJ, the FBI, it too fails to allege a pattern or practice of providing unlawful FOIA responses—specifically, of categorically denying requests for records of investigations of government officials under FOIA's Exemptions 6 and 7(C) without conducting any case-by-case balancing of the public and private interests at stake. Of the three FOIA responses that Plaintiff relies on in support of its Count III claim (ECF Nos. 1-7, 1-16, 1-17, Pl.'s Exs. C, L, and M; *see* Compl. ¶ 32), each request involves "strikingly different subject matter," and each received a correspondingly different response, based on grounds unique to each request. *ACLJ*, 470 F. Supp. 3d at 6.

First, the requests themselves are dissimilar. As explained above, the similarity of the underlying requests is a factor courts take into consideration, as it suggests that the agency's behavior stems from a considered decision (for example, the applicability of a particular exemption to a particular category of documents) rather than isolated mistakes. *Id.* at 6. One request seeks information pertaining to a current U.S. Congressman's private conduct, ECF No. 1-5, Pl.'s Ex.

18

A, one seeks information pertaining to a former Cabinet Secretary's official conduct, Def.'s Ex. 4, and the third seeks information pertaining to a state senator's private conduct. Def.'s Ex. 5. And each request provides different explanations for the public interest at issue in disclosure—or does not mention the public interest at all. *See, e.g., Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1094 (D.C. Cir. 2014) (explaining that Exemption 7(C) "requires the person requesting the information to establish a sufficient reason for the disclosure") (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). As the D.C. Circuit has explained, "in cases where 'the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure.'" *Id*. (quoting *Favish*, 541 U.S. at 172).

And the requests also vary in whether they include facts that would demonstrate that an investigation had even been publicly disclosed. For example, in the FOIA request seeking records relating to former Arizona State Senator Mark Finchem, the request asserts that Finchem had "publicly acknowledged that he sat for an FBI interview" but then only cited to materials referencing that Finchem "was interviewed by DOJ" – not the FBI. *See* Def.'s Ex. 5. The information would have had to be officially and publicly disclosed by the FBI, which the request does not mention. The weighing of the private and public interests in each of these circumstances would be unique, and it is not reasonable to infer a uniform application of an unlawful policy or practice in the face of the unique balancing each request requires.

Second, the FBI's responses across each of the three requests were not uniform. *See, e.g., ACLJ*, 470 F. Supp. 3d at 7. The response to Plaintiff's request for records pertaining to State Senator Mark Finchem explains that Plaintiff's request is denied for the additional reason that "the

material you requested is located in an investigative file which is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A)"—a response that Plaintiff does not allege was improper. ECF No. 1-7, Pl.'s Ex. M. The response to Plaintiff's request for material relating to former Secretary of the Interior Ryan Zinke provides a privacy release form for Plaintiff to complete and provides instructions for completing and returning the form. ECF No. 1-16, Pl.'s Ex. L. And the response to Plaintiff's request for records relating to Congressman Matt Gaetz explains that the FBI did, in fact, conduct a search for responsive documents before making its determination. *Compare*, ECF No. 1-7, Pl.'s Ex. C ("The FBI has completed its search for records[.]") *with* Compl. ¶ 49 (characterizing unlawful practice as issuing "a categorical denial without searching for . . . responsive records"). Even if three instances of allegedly unlawful conduct were sufficient to establish a practice, which is doubtful, *see ACLJ*, 470 F. Supp. 3d at 7 (refusing to find a pattern based on three instances), the dissimilarity of these three requests and responses precludes a finding that Plaintiff had adequately pleaded such a practice here.

Furthermore, Plaintiff acknowledges that the analysis for responding to FOIA requests seeking third-party records requires a balancing of the individual's privacy interests against the public's interest in disclosure. *See* Compl. ¶ 32. In applying both Exemptions 6 and 7(C), courts "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992); *see also Wright v. U.S. Dep't of Just.*, No. 14-cv-558-ESH, 2015 WL 1153372, at *3 (D.D.C. Mar. 16, 2015). In this context, the specific facts of each individual request are especially important to establish a consistent pattern of improper balancing. *See CREW*, 746 F.3d at 1096 ("investigation of major, wide-ranging public corruption" of former Speaker of the House was a significant public interest); *Kimberlin v. U.S. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998)

(court may consider "the rank of the public official involved and the seriousness of the misconduct alleged" in conducting Exemption 7(C) balancing). In fact, two of the FOIA responses that Plaintiff relies on — the Gaetz response and the Finchem response — expressly mention that the FBI considered whether "the public's interest in disclosure . . . outweigh the personal privacy interests of an individual[,]" undermining Plaintiff's allegation that the FBI conducted no balancing at all. ECF Nos. 1-7, 1-17, Pl.'s Exs. C, M. If Plaintiff believes that FBI erred in its balancing of public and private interests under Exemptions 6 and 7(C) and improperly withheld records, it may bring a FOIA lawsuit challenging the agency's response to that request. 5 U.S.C. § 552(a)(4)(B). But the three requests that Plaintiff identifies are too dissimilar to establish a policy or practice. *See ACLJ*, 470 F. Supp. 3d at 8 (holding allegation that agency "violated FOIA multiple times in different ways in response to three novel kinds of requests" insufficient to state a claim).

Because Plaintiff's requests cover a range of topics, there are too many variables at play for a sample size of three to yield anything more than a "sheer possibility that [the] defendant has acted unlawfully." *See Iqbal*, 556 U.S. at 678; *see also ACLJ*, 470 F. Supp. 3d at 8 (counseling "against inferring a policy or practice from a small number of episodes"). Put differently, the fewer examples a plaintiff cites of an alleged policy or practice, the more consistent those examples need to be in order for it to be plausible that the alleged policy or practice actually exists. Plaintiff has failed to "allege . . . facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt*, 926 F. Supp. 2d at 293 (quoting *Payne Enters.*, 837 F.2d at 491). Because Plaintiff fails to show that these requests demonstrate an improper pattern or practice, Plaintiff's Count III claim should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts II and III of the complaint for failure to state a claim for which relief can be granted.


Dated: July 29, 2024                         BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             MARCIA BERMAN
                                             Assistant Director
                                             Civil Division, Federal Programs Branch

                                             */s/ Anna Deffebach*
                                             ANNA DEFFEBACH
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L Street, NW
                                             Washington, DC 20005
                                             Phone: (202) 305-8356
                                             Fax: (202) 616-8470
                                             E-mail: Anna.L.Deffebach@usdoj.gov
                                             D.C. Bar No. 241346

                                             *Counsel for Defendant*