**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**,** | ) ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 1:24-cv-01497-LLA |
| v. | ) ) | (Oral Hearing Requested) |
| U.S. DEPARTMENT OF JUSTICE**,** | ) ) ) | |
| *Defendant*. | ) ) | |

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS II AND III OF PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

I. Legal Background ............................................................................................................. 1

II. Procedural Background .................................................................................................. 4

ARGUMENT ............................................................................................................................ 5

I. Count II plausibly alleges that the DOJ has an unlawful policy and practice of issuing *Glomar* responses to FOIA requests for records relating to publicly disclosed investigations. ........................................................................................................................ 6

A. Because the DOJ is an "agency" under FOIA, repeated FOIA violations across different DOJ components can collectively support a policy and practice claim against the DOJ. ................................................................................................................................. 6

B. Count II plausibly alleges a policy and practice claim based on multiple incidents of similar improper *Glomar* responses regarding publicly disclosed investigations into government officials. ............................................................................................................ 9

i. The DOJ misconstrues legal standards for a policy and practice claim that alleges repeated misapplication of FOIA exemptions. ........................................................... 9

ii. Multiple improper *Glomar* responses cited in the Complaint are more than sufficient to plausibly allege a policy and practice claim. ........................................... 14

iii. Language of the *Glomar* responses further supports the inference of an improper policy and practice. ...................................................................................................... 23

iv. The DOJ misstates CREW's pleading burden. ...................................................... 24

II. Count III plausibly alleges the DOJ has an unlawful policy and practice regarding investigations into government officials, based on official DOJ presentations and multiple improper categorical denials. ............................................................................................. 25

CONCLUSION ...................................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA*, 710 F.3d 422, (D.C. Cir. 2013)..............................................................24

*Adionser v. DOJ*, 811 F. Supp. 2d 284 (D.D.C. 2011) ...................................................8

*Am. Ctr. for L. & Just. v. FBI*, 470 F. Supp. 3d 1 (D.D.C. 2020) (*ACLJ II*) ...................12, 16, 27

*Am. Ctr. for L. & Just. v. U.S. Dep't of State*,
    289 F. Supp. 3d 81 (D.D.C. 2018) (*ACLJ I*) ...............................................11, 15

*Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*,
    830 F.3d 667 (D.C. Cir. 2016) (*AILA*) ........................................................4, 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................6

*Bartko v. DOJ*, 898 F.3d 51 (D.C. Cir. 2018).......................................................2, 18, 19

*Comcast Corp. v. FCC*, 600 F.3d 642 (D.C. Cir. 2010) ................................................8

*\*CREW v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014) (*CREW I*) ............................... passim

*\*CREW v. DOJ*, 854 F.3d 675 (D.C. Cir. 2017) (*CREW II*).......................1, 21, 22, 26

*CREW v. DOJ*, 846 F.3d 1235 (D.C. Cir. 2017) (*CREW III*) ...................................4, 16

*CREW v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) (*CREW IV*). ........................................30

*Emery v. DOJ*, 639 F. Supp .3d 104 (D.D.C. 2022) ......................................................8

*Feinman v. FBI*, 269 F.R.D. 44 (D.D.C. 2010) ............................................................11

*Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019) ...................................7

*Frost Brown Todd LLC v. Ctrs. for Medicare & Medicaid Servs.*,
    No. 21-cv-2784, 2024 WL 450056 (D.D.C. Feb. 5, 2024). ...................................27

*Ginarte v. Mueller*, 534 F. Supp. 2d 135 (D.D.C. 2008) ..............................................8

*Humana, Inc. v. Heckler*, 758 F.2d 696 (D.C. Cir. 1985)..............................................9

*Jud. Watch, Inc., v. DHS*, 895 F.3d 770 (D.C. Cir. 2018) ......................................11, 16

*Khine v. DHS*, 943 F.3d 959 (D.C. Cir. 2019) ..............................................................4

*Kimberlin v. DOJ*, 139 F.3d 944 (D.C. Cir. 1998) ...................................................................... 25

*Laughlin v. Holder*, 923 F. Supp. 2d 204 (D.D.C. 2013) ............................................................ 6

*Marino v. DEA*, 685 F.3d 1076 (D.C. Cir. 2012) ...................................................................... 23

*Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs,*
  369 F. Supp. 3d 151 (D.D.C. 2019) (*MCE*) .................................................................. 9, 14, 15

*Moore v. CIA*, 666 F.3d 1330 (D.C. Cir. 2011) ......................................................................... 22

*Muckrock, LLC v. CIA*, 300 F.Supp.3d 108 (D.D.C. 2018)........................................................ 26

*Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221 (D.D.C. 2011). ......................................... 28

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)........................................ 18

*Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995)..................... 13

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ........................... 10, 11, 12

*Peralta v. U.S. Att'y's Off.*, 136 F.3d 169 (D.C. Cir. 1998)......................................................... 7

*Stolt-Nielsen Transp. Group Ltd. v. United States*, 534 F.3d 728 (D.C. Cir. 2008)..................... 31

**Statutes**

5 U.S.C. § 552 ................................................................................................................... 1, 3, 26

**Other Authorities**

*About the Office of Information Policy*, U.S. Dep't of Just., https://www.justice.gov/oip/about-office (Dec. 22, 2022) ...................................................................................................... 2, 8

Office of Inspector General, U.S. Department of the Interior, *Former Secretary Did Not Comply with Ethical Obligations and Duty of Candor* (Feb. 16, 2022), https://www.oversight.gov/sites/default/files/oig-reports/DOI/WebReactFormerSecretaryEthicalNoncompliance.pdf. ...................................... 19

**Regulations**

28 C.F.R. § 0.24 .................................................................................................................. 2, 25

28 C.F.R. § 16.1 ...................................................................................................................... 1

## INTRODUCTION

Counts II and III of the Complaint seek to compel the Department of Justice (DOJ) and its components to comply with settled requirements of the Freedom of Information Act (FOIA): namely, when responding to requests for records relating to publicly disclosed investigations of government officials, agencies must confirm or deny the existence of records; and when an agency acknowledges such records exist, it must search for and produce all responsive, non-exempt portions thereof. Those requirements are dictated by binding precedent, including cases previously brought by Plaintiff Citizens for Responsibility and Ethics in Washington (CREW) against the DOJ. *See, e.g.*, *CREW v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014) (*CREW I*); *CREW v. DOJ*, 854 F.3d 675 (D.C. Cir. 2017) (*CREW II*). CREW's Complaint plausibly alleges—citing multiple instances of noncompliance and official FOIA guidance posted on DOJ's website—that DOJ components have employed impermissible policies and practices in defiance of this precedent.

The DOJ claims that CREW's allegations fail to plausibly allege an unlawful policy and practice, but its position is inconsistent with the FOIA's text and case law, and would impose unreasonable pleading burdens on those seeking equitable relief for repeated FOIA violations. This Court should deny Defendant's motion to dismiss Counts II and III of the Complaint.

## BACKGROUND

### I.    Legal Background

The FOIA, 5 U.S.C. § 552, requires federal agencies to release requested records to the public unless one or more specific statutory exemptions apply. The statute imposes obligations on federal "agencies," which is defined to include "any executive department," such as the DOJ. 5 U.S.C. § 552(f)(1). The DOJ has instituted "a decentralized system for processing requests, with each component handling requests for its records." 28 C.F.R. § 16.1(c). Nevertheless, to

ensure the DOJ can meet its legal obligations as a FOIA-covered "agency," the Office of Information Policy (OIP) serves a coordinating role among DOJ components. OIP "manages the Department of Justice's obligations under the FOIA" by, among other things, "adjudicating administrative appeals from denials of access to records made by Department components under the FOIA . . . handling initial requests for records of the Offices of the Attorney General, Deputy Attorney General and Associate Attorney General, as well as other Senior Management Offices . . . and handling the defense of certain FOIA matters in litigation."[1] OIP is also tasked with "[d]eveloping, coordinating, and implementing policy with regard to the [FOIA], including publishing guidance and other material related to FOIA matters"; and "[p]roviding legal assistance and advice to government agencies and organizational components of the Department on questions regarding the interpretation and application of the FOIA." 28 C.F.R. § 0.24(b), (c).

When responding to a FOIA request, an agency may issue a "*Glomar* response" neither confirming nor denying the existence of responsive records only "in that rare situation when either confirming or denying the very existence of records responsive to a request would 'cause harm cognizable under [a] FOIA [exemption].'" *Bartko v. DOJ*, 898 F.3d 51, 63 (D.C. Cir. 2018) (cleaned up). And short of a *Glomar* response, an agency may categorically withhold a class of documents "only when the range of circumstances included in the category characteristically supports an inference that the statutory requirements for exemption are satisfied." *CREW I*, 746 F.3d at 1088–89 (cleaned up).

FOIA Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records

---

[1] *About the Office of Information Policy*, U.S. Dep't of Just., https://www.justice.gov/oip/about-office (Dec. 22, 2022).

or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* at 1091 (quoting 5 U.S.C. § 552(b)(7)(C)). "Similarly, Exemption 6 applies to 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'" *Id.* at 1091 n.2 (quoting 5 U.S.C. § 552(b)(6)). When information is claimed to be exempt from disclosure under both provisions, courts "focus . . . on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus 'establishes a lower bar for withholding material.'" *Id.* (cleaned up).

The DOJ has a long history of thwarting CREW's FOIA rights by issuing *Glomar* responses or categorical denials (under Exemptions 6 and 7(C)) of requests relating to publicly disclosed investigations of government officials. More than a decade ago, the D.C. Circuit squarely rejected that practice, holding that (1) where "public statements confirm[]" that an individual "had been under investigation," the DOJ's "acknowledgement that it ha[s] responsive records would not itself cause harm by confirming that fact, rendering a *Glomar* response inappropriate," and (2) "categorical withholding" under Exemption 7(C) of records relating to publicly disclosed investigations of government officials is likewise inappropriate because in such cases "the balance does not characteristically tip in favor of non-disclosure." *CREW I*, 746 F.3d at 1091–96.

Even if exemptions apply to particular information, any reasonably segregable portion of a record shall be provided to any person requesting such record after redaction of the portions which are exempt. 5 U.S.C. § 552(b). "[O]nce an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record—i.e., as a unit— except insofar as the agency may redact information falling within a statutory exemption." *Am.*

3

*Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 677 (D.C. Cir. 2016) (*AILA*) (citing 5 U.S.C. § 552(a)(3)(A), (b)).

Finally, a plaintiff "may challenge an agency's 'policy or practice' where it 'will impair the party's lawful access to information in the future.'" *CREW v. DOJ*, 846 F.3d 1235, 1242 (D.C. Cir. 2017) (*CREW III*) (quoting *Newport Aeronautical Sales v. Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012)). "[R]epeat requesters who 'will suffer continuing injury' have standing to bring such claims," *Khine v. DHS*, 943 F.3d 959, 965 (D.C. Cir. 2019) (quoting *Newport*, 684 F.3d at 164), especially where, as here, they have been forced to litigate wrongful denials of the same kind before. *CREW III*, 846 F.3d at 1242.

## II.    Procedural Background

On May 21, 2024, CREW instituted this FOIA action alleging that the DOJ improperly withheld records responsive to CREW's FOIA request regarding Rep. Matt Gaetz (Count I), and has a policy and practice of improper *Glomar* responses and categorical denials (Count II and III). The Complaint alleges that "as a repeat requester of DOJ records, CREW has standing to challenge DOJ's unlawful FOIA policies and practices," Compl. ¶ 7, ECF No. 1, and that "CREW has other FOIA requests pending before the DOJ seeking records about publicly-disclosed investigations of government officials . . . and intends to submit similar requests in the future," *id.* ¶ 35.

The Complaint identifies multiple instances of DOJ components responding to CREW's FOIA requests concerning publicly disclosed investigations of government officials by providing *Glomar* responses or categorical denials under Exemptions 6 and 7(C), and refusing to process or release any requested records. *Id.* ¶ 31-32; Compl. Ex. C, E-M; ECF Nos. 1-7, 1-9 – 1-17. The Complaint also references two versions of a DOJ presentation posted on the agency's website, titled "Advanced Considerations Exemptions 6 & 7(C)," in which the DOJ stated its position that

4

"Generally, an agency can issue a Glomar response or categorical denial without first conducting a search. If a Glomar response or categorical denial are not appropriate, the agency generally needs to search for and process responsive records." Compl. ¶ 33.[2]

On July 29, 2024, the DOJ moved to dismiss Counts II and III of the Complaint, arguing that the two policy and practice claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Def.'s Mem. at 1-2, ECF No. 8-1.

## LEGAL STANDARD

A complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). In deciding a motion to dismiss, the court presumes the truth of the factual allegations in the complaint and affords the plaintiff "every favorable inference that may be drawn from the allegations of fact." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 208–09 (D.D.C. 2013) (citation omitted). The court does not, however, "accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Id.* at 209 (citation omitted).

---

[2] *Advanced Considerations Exemptions 6 & 7(C)*, Dep't of Just., at 24 (May 2020), https://www.justice.gov/oip/page/file/1324386/dl [https://perma.cc/BM4Q-VWQ9]; *Advanced Considerations Exemptions 6 & 7(C)*, Dep't of Just., at 28 (Jan. 2023), https://www.justice.gov/d9/2023-03/exemptions_6_and_7c_advanced_-_january_2023.pdf [https://perma.cc/3SER-Y7NP].

**ARGUMENT**

The DOJ wrongly asserts that policy and practice claims require a pattern of FOIA violations by a *single* agency component (rather than a collection of components), that the FOIA requests at issue must relate to precisely the same subject matter, and that, to survive a motion to dismiss, a plaintiff must plead detailed facts unobtainable without discovery. Each argument fails.

First, the DOJ is an agency under the FOIA whether or not its components are *also* agencies, and its inability to deal with agency-wide noncompliance supports an agency-wide claim, regardless of how the agency has chosen to structure its FOIA intake process. Second, multiple examples alleged in the Complaint, showing similar improper *Glomar* responses across different FOIA subjects, suffices to plead Count II. Third, an unlawful practice memorialized in official DOJ presentations, combined with consistent incidents of noncompliance, suffices to plead Count III.

**I.  Count II plausibly alleges that the DOJ has an unlawful policy and practice of issuing *Glomar* responses to FOIA requests for records relating to publicly disclosed investigations.**

**A.  Because the DOJ is an "agency" under FOIA, repeated FOIA violations across different DOJ components can be aggregated to support a policy and practice claim against the DOJ.**

When interpreting FOIA, as with other statutes, "a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). "Under the FOIA, 'the term "agency" . . . includes any *executive department* . . . or other establishment in the executive branch of the Government.'" *Peralta v. U.S. Att'y's Off.*, 136 F.3d 169, 173 (D.C. Cir. 1998) (quoting 5 U.S.C. § 552(f)) (emphasis added). The statutory text does not explicitly refer to agency components, much less does it absolve a covered "agency" of FOIA violations by its components. The DOJ

6

nevertheless argues that the six FOIA responses identified in the Complaint should be compartmentalized according to the separate DOJ components they are from, because "DOJ components each use their own practices for reviewing and responding to FOIA requests, each component is therefore, in effect, analogous to a separate agency for purposes of its FOIA practices." Def.'s Mem. at 11-12, ECF No. 8-1. Sure, DOJ components may "in effect" be "analogous" to separate agencies, but the FOIA makes clear that the DOJ—an "executive department"—is itself an "agency" and may be sued for its components' FOIA violations.

Indeed, the DOJ has argued for years that the Department, and not its components, is the *only* proper "agency" defendant under FOIA. *See, e.g.*, *Ginarte v. Mueller*, 534 F. Supp. 2d 135, 137 n.4 (D.D.C. 2008); *Emery v. DOJ*, 639 F. Supp .3d 104, 110 n.2 (D.D.C. 2022). In one case, it secured dismissal of its components as defendants. *Adionser v. DOJ*, 811 F. Supp. 2d 284, 290 n.1 (D.D.C. 2011). The DOJ cannot have it both ways.[3]

Since the DOJ is indisputably an agency under the FOIA, and since an unlawful FOIA practice of an agency gives rise to a policy and practice claim, it follows that alleged violations by different DOJ components can be aggregated for purposes of a policy and practice claim. Analogously, a court granted relief for a policy and practice claim alleging improper FOIA responses from "five instances, across two Corps districts" of the United States Army Corps of Engineers, involving "multiple employees." *Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151, 159-60 (D.D.C. 2019) (*MCE*). The FOIA requests in *MCE* were

---

[3] Courts may invoke judicial estoppel "[w]here a party assumes a certain position in a legal proceeding, . . . succeeds in maintaining that position, . . . [and then,] simply because his interests have changed, assume[s] a contrary position." *Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010) (citation omitted). It is not necessary to invoke that doctrine here, however, because the DOJ's position is plainly incorrect.

7

also sent directly to different Corps districts, *id.* at 155-56, further undercutting the DOJ's suggestion that CREW's submission to different components who do intake separately is an acknowledgement of the DOJ's position. *See* Def.'s Mem. at 12, ECF No. 8-1.

It is immaterial that the DOJ has adopted regulations providing for decentralized FOIA intake. *See* Def.'s Mem. at 12, ECF No. 8-1 (citing 28 C.F.R. § 16.1(c)). An agency cannot shirk its FOIA obligations based on how it chooses to administratively structure its components. That agency-wide compliance with statutory duties might be "administratively difficult" under existing regulations is "a problem of the [agency]'s own creation, which [it] must remedy," *Humana, Inc. v. Heckler*, 758 F.2d 696, 707 (D.C. Cir. 1985), and is all the more reason why this is a circumstance in which judicial intervention is required to correct the agency's "policy or practice of . . . failure to abide by the terms of the FOIA." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). Contrary to the DOJ's characterization, CREW's position does not mean "all DOJ components [must] coordinate and maintain *uniformity* in their practices for responding to FOIA requests," Def.'s Mem. at 13-14, ECF No. 8-1 (emphasis added), but it does mean that the DOJ must ensure that each component *complies with the FOIA*. Indeed, that is precisely OIP's function: to "manage[] the Department of Justice's obligations under the FOIA."[4]

In short, nothing in the FOIA's text or case law suggests that policy and practice claims must be based on repeated violations by the *same* agency component; instead, repeated violations by *separate* components of the same agency suffice.

---

[4] *About the Office of Information Policy*, *supra* note 1.

**B. Count II plausibly alleges a policy and practice claim based on multiple incidents of similar improper *Glomar* responses regarding publicly disclosed investigations into government officials.**

**i. The DOJ misconstrues the legal standards for policy and practice claims alleging repeated misapplication of FOIA exemptions.**

A policy and practice claim lies when a plaintiff alleges: (1) an informal unlawful practice across agency components, (2) involving repeated misapplication of particular FOIA exemptions, (3) which the agency is unable to correct. *Payne*, the primary precedent on the policy and practice claim, is instructive.

First, "[t]he fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant" to a policy and practice claim so long as it does not hinge on "merely isolated mistakes by agency officials." *Payne*, 837 F.2d at 491; *see also Jud. Watch, Inc., v. DHS*, 895 F.3d 770, 778 (D.C. Cir. 2018).

Second, the officers in *Payne* repeatedly and erroneously invoked FOIA Exemptions 4 and 5, which the Court found sufficient for purposes of a policy and practice claim. 837 F.2d at 488-89, 495; *see also Jud. Watch*, 895 F.3d at 782.

Third, "the Secretary[ of Air Force]'s inability to deal with [Air Force Logistics Command] officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification," entitled the plaintiff in *Payne* to declaratory relief with respect to the unlawful policy and practice. 837 F.2d at 494; *see also Feinman v. FBI*, 269 F.R.D. 44, 52 (D.D.C. 2010). The officers in *Payne* consistently denied the plaintiff's FOIA requests despite the Secretary's admonishment, for which the Court held that the plaintiff was

9

entitled to relief. In other words, the DOJ's mere *failure* to correct an unlawful practice, even without a centralized and binding policy, suffices to state a policy and practice claim.[5]

Applying this framework here, CREW has plausibly alleged a consistent pattern of *Glomar* responses to requests relating to publicly disclosed investigations of public officials, which are improper under *CREW I* and other cases. *See* Compl. ¶¶ 13, 30, ECF No. 1. The DOJ nevertheless argues that "even if the Court were to look at all six requests and responses at issue in Count II in the aggregate . . . Plaintiff has failed to adequately plead that the requests and responses are sufficiently similar to establish an unlawful pattern or practice," because the requests "involve four different individuals and seek documents relating to completely different investigations—from an Assistant United States Attorney, to a former cabinet secretary, a former mayor, and two former state senators." Def.'s Mem. at 15-16, ECF No. 8-1 (citations omitted). While it is true that the requests implicated different officials and investigations, this *reinforces*, rather than undermines, that the agency has an unlawful FOIA practice with respect to investigations of government officials.

*Am. Ctr. for L. & Just. v. FBI*, 470 F. Supp. 3d 1 (D.D.C. 2020) (*ACLJ II*), which the DOJ cites, supports CREW's position. The court noted that (1) "the Circuit has never articulated a 'single subject' or 'single type of request' requirement for a policy-or-practice claim," and (2)

_____

[5] The DOJ also cites a case suggesting an additional necessary condition that the violation must be "sufficiently outrageous." Def.'s Mem. at 8, ECF No. 8-1 (citing *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 289 F. Supp. 81, 87 (D.D.C. 2018) (*ACLJ I*)). There are doubts about "sufficiently outrageous" as a necessary condition, because *ACLJ I* relied in part on the district court opinion in *Judicial Watch* which was subsequently reversed. *See ACLJ I*, 289 F. Supp. 3d at 90 (citing *Jud. Watch, Inc. v. DHS*, 211 F. Supp. 143, 147 (D.D.C. 2016), *rev'd*, 895 F.3d 770 (D.C. Cir. 2018)). In any case, repeated misapplication of FOIA exemption is sufficiently outrageous, *see Payne*, 837 F.2d at 494, especially given clear case law on the subject, *see infra* Parts I.B & II.

"applicability of a particular exemption to a particular category of documents" can demonstrate that "the agency's behavior stems from a considered decision . . . rather than isolated mistakes." *Id.* at 6. In other words, the point is not whether the DOJ can point to granular differences in the subject matter of the requests, but whether when considered together they plausibly suggest "a considered decision" from the agency—*i.e.*, the alleged policy and practice of noncompliance.

Here, the Complaint alleges that "[c]omponents of the DOJ—including but not limited to the Criminal Division, the Executive Office of United States Attorneys, the Office of Information Policy, and the FBI—have adopted and are engaged in a policy and practice of . . . issuing *Glomar* responses to CREW simply because a FOIA request seeks records relating to an investigation of a third party, even when that investigation has been publicly disclosed." Compl. ¶ 43, ECF No. 1. This practice is contrary to binding precedent, including cases brought by CREW against the DOJ. In *CREW I*, for example, the court held that while "[i]ndividuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation," where "public statements confirmed [the subject of the FOIA request] had been under investigation, the FBI's acknowledgment [in response to the FOIA request] that it had responsive records would not itself cause harm by confirming that fact, rendering a *Glomar* response inappropriate." 746 F.3d at 1091-92. More generally, a categorical rule to "refuse to confirm or deny the existence of any information in its law enforcement records which mentions an individual by name . . . . would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files . . . contrary to FOIA's overall purpose of disclosure, and thus is not a permissible reading of Exemption 7(C)." *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893, 896 (D.C. Cir. 1995). In other words, the Complaint plausibly alleges (1) an informal unlawful

practice across DOJ components (2) involving repeated misapplication of Exemptions 6 and 7(C) through *Glomar* responses relating to publicly disclosed investigations, (3) which the DOJ was unable to correct, *see supra* at 9. This suffices to make out a policy and practice claim.

Because the alleged practice is that the DOJ and its components adopt the same improper practice in response to any request concerning investigations of third parties such as government officials, it is not necessary that the requests concern the same officials or investigations. In fact, the same improper *Glomar* response to CREW's requests relating to *different* officials and investigations strengthens the policy and practice claim, because it suggests the plausible existence of a consistent FOIA practice with respect to *any* investigation of government officials.

*MCE*, in a similar vein, granted relief for a policy and practice claim involving "undisputed evidence of five instances, across two Corps districts, over four years, in which the Corps improperly withheld the same types of documents under Exemption 5." 369 F. Supp. 3d at 159-60. The court held that the invocation of the same exemption based on the same erroneous reason entitled the plaintiff to relief: "The Corps' record of repeated and almost identical FOIA violations leads to the unavoidable conclusion that its decisions resulted from a policy or practice to withhold materials in the application files of pending Section 404 permit applications, even if those materials were not inter- or intra-agency records." *Id.* at 160. Each FOIA request offered as evidence in *MCE* concerned *distinct* permits issued under the Section 404 Clean Water Act permit program run by the Corps. *Id.* at 155-56.[6]

---

[6] The diverse subject matter of these requests range from "flooding of the mine by the West Fork Black River" to "construction of soccer fields on low-lying land within Creve Coeur Lake Memorial Park." Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment at 4-5, *Mo. Coal. for Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151 (D.D.C. 2019) (No. 18-cv-663).

As in *MCE*, Count II alleges multiple instances, across multiple DOJ components, withholding the same types of documents, under the same FOIA exemptions, for the same reason. *See infra* Part I.B.ii (discussing individual instances). That is sufficiently similar for a policy and practice claim based on misapplication of FOIA exemptions, contrary to the DOJ's characterization of these examples as only sharing a "high-level commonality," Def.'s Mem. at 16, ECF No. 8-1.

The DOJ cites cases involving a policy and practice of unreasonable delay in responding to FOIA requests. *See* Def.'s Mem. at 15-16, ECF No. 8-1 (citing *Jud. Watch*, 895 F.3d at 782; *ACLJ II*, 470 F. Supp. 3d at 6). But such claims are distinguishable from claims, like those in this case, alleging repeated misapplication of FOIA exemptions. An unreasonable delay claim might be made stronger by highly similar subject matter between the incidents, because delay is inherent in FOIA processing itself and can be influenced by many different factors, some inevitable and justifiable. The same cannot be said of repeated misapplications of FOIA exemptions. "An agency's intransigence in processing requests could give rise to a 'viable' policy-or-practice claim, but 'inevitable but unintended delay attributable to lack of resources' is insufficient to support one." *ACLJ I*, 289 F. Supp. 3d at 90-91 (citations omitted); *see also ACLJ II*, 470 F. Supp. 3d at 6-8. Parties should not have to "pursue successive and 'invariably successful' challenges every time" it seeks the same type of documents and gets the same response, *CREW III*, 846 F.3d at 1242; "Congress did not intend for the agency to use the FOIA offensively to hinder the release of non-exempt documents so as to force the appellant to bring several lawsuits to obtain release of the documents." *Jud. Watch*, 895 F.3d at 781 (cleaned up).

### ii. Multiple improper *Glomar* responses cited in the Complaint are more than sufficient to plausibly allege a policy and practice claim.

The DOJ then seeks to undermine individual incidents referenced in the Complaint, arguing that the examples concerning Rudy Giuliani have insufficiently identified the public disclosure in question to defeat a *Glomar* response. Def.'s Mem. at 16-17, ECF No. 8-1 (citing Def.'s Mem. Ex. 1, 2, ECF Nos. 8-2, 8-3). But even setting aside the two Giuliani requests, the other four examples more than suffice to plausibly allege a policy and practice of improper *Glomar* responses.[7] At a minimum, CREW has pleaded sufficient facts to survive a motion to dismiss. Whether the DOJ has such a policy and practice is ultimately a factual question on which CREW should be permitted targeted discovery. *See Jud. Watch*, 895 F.3d at 784 (reversing dismissal of policy and practice claim and instructing district court to determine "the appropriateness of discovery").

**1.** The request regarding former Assistant United States Attorney Terra Morehead, Compl. Ex. E, ECF No. 1-9; Def.'s Mem. Ex. 5, ECF No. 8-6, asked for "[a]ll records, relating to [AUSA Morehead] . . . that pertain to proven or alleged violations by AUSA Morehead of any provisions of law or constitution, any provisions of the United States Attorneys' Manual adopted by the Department of Justice, any ethical duties imposed upon AUSA Morehead in her capacity as a government prosecutor as set forth in the Kansas Rules Relating to Discipline of Attorneys, or any other professional misconduct," among other things. Def.'s Mem. Ex. 5 at 1, ECF No. 8-6. The request then identified four federal court decisions in which AUSA Morehead was specifically found by the court to have engaged in unlawful prosecutorial misconduct. *Id*. at 3-4

---

[7] If the Court finds that the Giuliani requests are inadequate in identifying public disclosure of the investigation, the corresponding response from DOJ components are nevertheless relevant for demonstrating the format of agency *Glomar* responses. *See* Compl. Exs. F, G, ECF Nos. 1-10, 1-11.

(citing for example *United States v. Orozco*, 291 F. Supp. 3d 1267 (D. Kan. 2017), *rev'd on other grounds*, 916 F.3d 919 (10th Cir. 2019)). The Executive Office for United States Attorneys (EOUSA) responded that "You have requested records concerning a third party. To the extent that non-public responsive records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. Because any non-public records responsive to your request would be categorically exempt from disclosure, this Office is not required to conduct a search for the requested records." Compl. Ex. E, ECF No. 1-9 (citations omitted).

As a threshold matter, the DOJ wrongly argues that this and other similarly worded responses are not *Glomar* responses. Def.'s Mem. at 17, ECF No. 8-1. That is putting form over substance. Even though this response does not say the agency refuses to confirm or deny the existence of records, it indisputably withheld the information about whether such records exist ("To the extent . . . records exist," "not required to conduct a search"). To justify withholding that information under FOIA, the DOJ must then resort to statutory exemptions, *see Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002), meaning it must demonstrate that either "confirming or denying the existence of records would itself 'cause harm cognizable under an FOIA [exemption],'" *CREW I*, 746 F.3d at 1091 (quoting *Roth v. DOJ*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)—which is just the legal standard for a *Glomar* response.[8]

The Morehead request cited *Bartko v. DOJ*, 898 F.3d 51 (D.C. Cir. 2018), where the Circuit rejected a *Glomar* response to a materially identical request concerning a federal

---

[8] Alternatively, if these are not *Glomar* responses, and are instead meant to confirm the existence of records, then they are categorical denials that support Count III.

prosecutor. Def.'s Mem. Ex. 5 at 4, ECF No. 8-6. There, the request asked for "[a]ny and all records created by and/or received by [DOJ's Office of Professional Responsibility (OPR)] in regard to [AUSA] Clay C. Wheeler, . . . which relate to or concern violations or alleged violations by AUSA Wheeler of Section 9.500 et seq. of the United States Attorneys' Manual," and "allegations of attorney misconduct involving violations of any standard imposed by law, applicable rules, professional conduct or Department of Justice policy," among others, to which OPR issued a *Glomar* response. *Bartko*, 898 F.3d at 62-63. The Fourth Circuit has previously found concerning conduct on the part of AUSA Wheeler and the U.S. Attorney's Office for the Eastern District of North Carolina. *Id.* at 60-61 (citing *United States v. Bartko*, 728 F.3d 327, 341-42 (4th Cir. 2013)). The court in *Bartko*, rejecting the *Glomar* response, first noted that Exemption 7(C)—which "establishes a lower bar for withholding material" than Exemption 6, *id.* at 67—applies only to law enforcement investigations, whereas "Bartko's request was not even limited to records resulting from OPR *investigations*, but included any records addressing *alleged* or actual misconduct by Wheeler." *Id.* at 65 (emphasis added). Second, even under Exemption 7(C)'s lower bar for withholding, "OPR was wholly unable to establish that there would be a single answer to every balancing of [public and privacy] interests involving any Wheeler records," especially given the Fourth Circuit's finding and the government's subsequent admission of a systemic problem. *Id.* at 67.

The *Glomar* response here fails for similar reasons. The request asked broadly for records that "pertain to proven or *alleged* violations by AUSA Morehead of any provisions of law or constitution, any provisions of the United States Attorneys' Manual . . . any ethical duties . . . or any other professional misconduct." Def.'s Mem. Ex. 5 at 1, ECF No. 8-6 (emphasis added). The request quoted four federal court opinions that have already found misconduct on the part of

16

AUSA Morehead, for example, "[i]n *United States v. Orozco*, 291 F. Supp. 3d 1267 (D. Kan. 2017), *rev'd on other grounds*, 916 F.3d 919 (10th Cir. 2019) . . . . [t]he Court found 'strong evidence that AUSA Morehead communicated a veiled threat of prosecution or threat of creating further complications in [witness's] case if he 'got in her way' by testifying in Defendant's case.'" *Id.* at 3 n.1. The request also quoted another opinion noting that "despite evidence of her conduct in both this and other criminal cases, the government has confirmed that it has not imposed internal sanctions or discipline against AUSA Morehead on the basis of untruthfulness," *id.* at 5 (quoting *CCA Recordings 2255 Litig. v. United States*, No. 19-cv-2491, 2021 WL 5833911, at *24 (D. Kan. Dec. 9, 2021)), which demonstrates the government's acknowledgement of allegations against AUSA Morehead. At the *very* least, most if not all records associated with these federal cases should be considered records that pertain to *alleged* violations of law and ethics by AUSA Morehead—that is, if EOUSA even did any such case-specific analysis in the one day it took them to respond, *see* Compl. Ex. E, ECF No. 1-9—which renders a *Glomar* response inappropriate.

    **2.**  The request regarding Tennessee State Senator Brian Kelsey, Compl. Ex. H, ECF No. 1-12; Def.'s Mem. Ex. 4, ECF No. 8-5, asked for "all documents related to DOJ's investigation of Tennessee State Senator Brian Kelsey for violating campaign finance laws and conspiring to defraud the Federal Election Commission (FEC) as part of a scheme to benefit his 2016 campaign for U.S. Congress that mention . . . Josh Smith," as well as "Amanda Bunning," among other parties. Def.'s Mem. Ex. 4 at 1, ECF No. 8-5. The request then linked to a DOJ press release, which specifically named "Joshua Smith" as one of Kelsey's co-conspirator. *Id.* at 2 n.1 (citing Press Release, Department of Justice, *Tennessee State Senator Pleads Guilty to*

*Campaign Finance Scheme*, (Nov. 22, 2022)[9]). The request also linked to a news article specifically pointing out that "Amanda Bunning, . . . was listed in the indictment as an individual who received information from the senator and passed it on to the others who handled the ACU's advertising," among other parties. *Id.* at 3 n. 6 (citing Sam Stockard, *Ex-Sen. Brian Kelsey Pleads Guilty to Two Counts of Federal Campaign Finance Violations*, Tennessee Lookout (Nov. 22, 2022[10]). With respect to Smith, the DOJ Criminal Division wrote that "to the extent that non-public responsive records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. Because any non-public records responsive to your request would be categorically exempt from disclosure, this Office is not required to conduct a search for the requested records." Compl. Ex. H at 1, ECF No. 1-12 (citations omitted). With respect to Bunning and other parties, the Criminal Division wrote that "I have decided to neither confirm nor deny the existence of such records pursuant to Exemptions 6 and 7(C) of the FOIA . . . Even to acknowledge the existence of law enforcement records on another individual could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.*

As explained *supra* at 15, both are *Glomar* responses because neither of them confirmed or denied the existence of records; and both are improper in light of the public disclosure identified. CREW recognizes that without prior public disclosure, the FOIA "disclosure of the identities of private citizens mentioned in law enforcement files constitutes an unwarranted

---

[9] Available at https://www.justice.gov/opa/pr/tennessee-state-senator-pleads-guilty-campaign-finance-scheme.
[10] Available at https://tennesseelookout.com/2022/11/22/ex-sen-brian-kelsey-pleads-guilty-to-two-counts-of-federal-campaign-finance-violations/.

invasion of privacy," *CREW I*, 746 F.3d at 1094 (cleaned up). But as CREW has successfully argued before, "individuals who have already been publicly identified—either through *agency press releases* or testimony in open court—as having been charged, convicted or otherwise implicated in connection with the public corruption investigation . . . have a diminished privacy interest in certain information that may be contained in the records at issue, and therefore the categorical rule of non-disclosure . . . does not apply to them." *CREW II*, 854 F.3d at 682 (emphasis added).

Here, the request pointed to a DOJ press release where the DOJ mentioned that Kelsey pleaded guilty, and Smith is a co-conspirator who also pleaded guilty. The agency has thus acknowledged the existence of records related to the investigation of Kelsey that also mentions Smith—if nothing else, the press release itself—and cannot use a *Glomar* response with respect to him. On the other hand, the news report pointing to the mention of Bunning in the indictment is sufficient to "pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency." *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011)*.* Even if the DOJ questions the sufficiency of identified public disclosure with respect to Bunning and other parties, there can be no doubt that at least with respect to Smith, the agency issued an improper *Glomar* response despite the identification of public disclosure in CREW's FOIA request. *See CREW II*, 854 F.3d at 682.

**3.** The request regarding Ryan Zinke, Compl. Ex. I, ECF No. 1-13; Def.'s Mem. Ex. 3, ECF No. 8-4, asked for "[a]ll records relating to U.S. Department of Interior Office of Inspector General ('Interior OIG') referral to DOJ concerning its finding that former Secretary of the Interior Ryan Zinke" committed certain ethical violations, among other things. Def.'s Mem. Ex. 3 at 1, ECF No. 8-4. The request noted that "[o]n February 16, 2022, Interior OIG stated in a

public report that DOJ declined to prosecute the former Secretary of the Interior following a referral by the Interior OIG," *id.* at 2, and linked to the public report in which the OIG wrote "[w]e referred our findings to the U.S. Department of Justice (DOJ), which declined prosecution of this matter in the summer of 2021."[11] The DOJ Criminal Division responded that "[t]o the extent that non-public responsive records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. Because any non-public records responsive to your request would be categorically exempt from disclosure, this Office is not required to conduct a search for the requested records." Compl. Ex. I at 1, ECF No. 1-13 (citations omitted).

Again, this is a *Glomar* response because it neither confirmed nor denied the existence of records, *see supra* at 15, and it is improper because the request asked for records related to Interior OIG's referral to DOJ, and Interior OIG itself disclosed the referral publicly. CREW recognizes that "an agency does not *waive* its right to invoke an otherwise valid FOIA exemption when 'someone other than the agency from which the information is being sought' discloses it," *Marino v. DEA*, 685 F.3d 1076, 1082 (D.C. Cir. 2012) (emphasis added) (quoting *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999)), which includes when federal agencies other than the one responding to FOIA disclosed the existence of the document. *Moore*, 666 F.3d at 1333 n. 4 ("release of the [record] by the FBI" is not "an *official acknowledgement* by the CIA" (emphasis added) (citation omitted)). But waiver through official acknowledgement is not the only reason

---

[11] Office of Inspector General, U.S. Department of the Interior, *Former Secretary Did Not Comply with Ethical Obligations and Duty of Candor* at 2 (Feb. 16, 2022), https://www.oversight.gov/sites/default/files/oig-reports/DOI/WebReactFormerSecretaryEthicalNoncompliance.pdf.

*Glomar* could be improper. Even if DOJ has not *waived* their right to invoke *Glomar*, it still must be the case that either "confirming or denying the existence of records would itself 'cause *harm* cognizable under an FOIA [exemption],'" *CREW I*, 746 F.3d at 1091 (emphasis added) (quoting *Roth*, 642 F.3d at 1178).

Put differently, *Glomar* responses are improper either where the agency has officially acknowledged existence of the records, or where confirming or denying the existence of records would not cause harm under FOIA exemptions. *See ACLU v. CIA*, 710 F.3d 422, 426, 432 n.11 (D.C. Cir. 2013) (noting harm under FOIA exemptions as a separate question that needs not be answered because the existence of official acknowledgment defeated *Glomar*). Here, CREW did not suggest that the DOJ acknowledged any record. But CREW asked for records relating to the Interior OIG's referral to the DOJ, and the Interior OIG's public acknowledgement of the referral made clear that such records exist, such that it is inconceivable that the DOJ's acknowledgment of the referral would cause any harm under Exemptions 6 and 7(C). To apply *Glomar* here would "stretch that doctrine too far—to give their imprimatur to a fiction of deniability that no reasonable person would regard as plausible. There comes a point where Courts should not be ignorant as judges of what they know as men and women." *Id.* at 431 (cleaned up).

**4.** The request regarding Pennsylvania state Senator Douglas Mastriano, Compl. Ex. J, ECF No. 1-14; Compl. Ex. K, ECF No. 1-15, asked for "[a]ll interview notes, summaries, memoranda, video recordings, audio recordings, or other records concerning Pennsylvania state Senator Douglas Mastriano," among other things. Compl. Ex. K at 1, ECF No. 1-15. The request noted that "Senator Mastriano's attorney has publicly acknowledged Mastriano 'sat for a voluntary interview with the FBI' regarding these activities and claims 'the FBI cleared him.'" *Id.* at 2 n.3 (quoting Farnoush Amiri & Marc Levy, *Mastriano willing to talk to Jan. 6*

*committee, spoke to FBI*, Associated Press (June 2, 2022)[12]). The FBI responded that "[y]ou have requested records on one or more third party individuals. Please be advised that the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C). The mere acknowledgment of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy." Compl. Ex. J at 1, ECF No. 1-14 (citations omitted).

*CREW I* squarely forecloses such a *Glomar* response. A government official's "obvious privacy interest in keeping secret the fact that he was the subject of an FBI investigation was diminished by his well-publicized announcement of that very fact . . . . Because [his] public statements confirmed he had been under investigation, the FBI's acknowledgment that it had responsive records would not itself cause harm by confirming that fact, rendering a *Glomar* response inappropriate." *CREW I*, 746 F.3d at 1092 (citing *Nation Mag.*, 71 F.3d at 896); *see also Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998) (a government official's public acknowledgment that he was subject of disciplinary proceedings "undoubtedly does diminish his interest in privacy: the public already knows who he is, what he was accused of, and that he received a relatively mild sanction").

Here, counsel for Mastriano announced publicly that Mastriano sat for a voluntary interview with the FBI, and claimed that he was cleared of any wrongdoing. For the FBI to merely acknowledge the existence of records *concerning* Mastriano would cause no harm to his privacy interests.

---

[12] Available at https://apnews.com/article/capitol-siege-2022-midterm-elections-pennsylvania-government-and-politics-3e0fcd88ac50d00e286e858567483d4c.

### iii. Language of the *Glomar* responses further supports the inference of an improper policy and practice.

The commonality of language across these examples of requests for records of third parties further supports a plausible inference of an improper *Glomar* practice.

First, regarding the Morehead and Mastriano requests, the only explanation for the invocation of Exemptions 6 and 7(C) are "[y]ou have requested records concerning a third party" or "[y]ou have requested records on one or more third party individuals." Compl. Exs. E, J, ECF Nos. 1-9, 1-14. As noted, the case law requires a more nuanced analysis. *See CREW II*, 854 F.3d at 682-83 ("Because the myriad of considerations involved in the Exemption 7(C) balance defy rigid compartmentalization, per se rules of nondisclosure based upon the type of document requested, the type of individual involved, or the type of activity inquired into, are generally disfavored.").

Second, regarding the Morehead, Kelsey, and Zinke requests, the language of each *Glomar* response is identical, word for word: "To the extent that non-public responsive records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy." Compl. Exs. E, H, I, ECF Nos. 1-9, 1-12, 1-13. This boilerplate language is legally incorrect, because it includes only "consent, proof of death, or an overriding public interest" as examples of reasons for disclosure, ignoring entirely official acknowledgement and announcement by the subject of the FOIA request themselves, among others. *See supra* at 20-21. As courts have acknowledged, usage of template language is relevant to establishing a policy and practice claim. *See Muckrock, LLC v. CIA*, 300 F.Supp.3d 108, 135-36 (D.D.C. 2018). Thus, the language of these four responses, in addition to their substance, bolsters the plausibility of Count II.

### iv.  The DOJ misstates CREW's pleading burden.

The DOJ also wrongly faults CREW for failing to allege that the incidents referenced in the Complaint are representative. Def.'s Mem. at 17, ECF No. 8-1. First, "an agency's behavior need not be entirely consistent to support a policy-or-practice claim," *ACLJ II*, 470 F. Supp. 3d at 7 (citing *Jud. Watch*, 895 F.3d at 779), so it is unclear why an unrepresentative but frequent noncompliance will necessarily defeat a policy and practice claim; the DOJ itself concedes that "allegation about representativeness may not be required to state a pattern or practice claim," Def.'s Mem. at 17-18, ECF No. 8-1. Second, the DOJ vastly overstates CREW's pleading burden. The Complaint alleges that the agency has an unlawful policy and practice and has provided plausible support for that claim by pointing to multiple incidents of violations. CREW has no further burden, at the pleading stage, to explain the violations and how systemic they are, otherwise it would be "placing a pleading burden on [plaintiffs] beyond what Rule 8 requires and flipping to the requester the burden that FOIA places on the agency to explain its" noncompliance. *Jud. Watch, Inc.*, 895 F.3d at 784. If the DOJ wishes to cast the violations as isolated incidents, it may attempt to introduce such facts at summary judgment, after an opportunity for targeted discovery. But this Court should not "mistake[] the burden at the motion to dismiss stage with the burden at summary judgment" for a policy and practice claim. *Frost Brown Todd LLC v. Ctrs. for Medicare & Medicaid Servs.*, No. 21-cv-2784, 2024 WL 450056, at *5 (D.D.C. Feb. 5, 2024). "[T]he agency's failure . . . [in] multiple requests on multiple occasions" is sufficient "specific allegations of fact," especially because "very rarely do requesters ever know of an agency's activities behind the scenes of a request prior to litigation." *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 230 (D.D.C. 2011).

24

**II.    Count III plausibly alleges the DOJ has an unlawful policy and practice regarding investigations into government officials, based on official DOJ presentations and multiple improper categorical denials.**

For similar reasons as Count II, Count III plausibly alleges a policy and practice of categorical denials of requests relating to investigations of public officials, which are inconsistent with *CREW I* and other cases. *See* Compl. ¶ 14, 30, ECF No. 1. Specifically, the Complaint alleges that "[c]omponents of the DOJ—including but not limited to the FBI—have adopted and are engaged in a policy and practice of . . . categorically denying CREW's FOIA requests for records of investigations of government officials without conducting any case-by-case balancing of the public and private interests at stake. . . . As part of its unlawful policy and practice, the DOJ has adopted an erroneous interpretation of FOIA under which it will issue a categorical denial without searching for, processing, and segregating non-exempt portions of responsive records which fall beyond the scope of the alleged categorical exemption." Compl. ¶¶ 47-49, ECF No. 1. The Complaint also references three categorical denials regarding Gaetz, Zinke, and Arizona Representative Mark Finchem, alleging that "DOJ issued these categorical denials without conducting any case-by-case balancing of the public and private interests at stake, and without processing the records and releasing any reasonably segregable, non-exempt portions." *Id.* ¶ 32; Compl. Exs. C, L, M, ECF Nos. 1-7, 1-16, 1-17. Then, the Complaint references two versions of the DOJ's "Advanced Considerations Exemptions 6 & 7(C)" presentation posted on its website, in which the DOJ stated its legal position that "[g]enerally, an agency can issue a Glomar response or categorical denial without first conducting a search. If a Glomar response or categorical denial are not appropriate, the agency generally needs to search for and process responsive records." *Id.* ¶ 33; *see supra* note 2. In other words, the Complaint alleged (1) an informal unlawful practice across DOJ components (2) involving repeated misapplication of Exemptions 6 and 7(C) through categorical denial without conducting a search

or releasing redacted documents, (3) which the DOJ was unable to correct and even guided components to do so, *see supra* at 9. This suffices to make out another policy and practice claim.

The DOJ unconvincingly disputes that the DOJ presentation slides support CREW's policy and practice claim, arguing that the Complaint "contains no other facts suggesting that this slide constitutes a DOJ policy." Def.'s Mem. at 8, ECF No. 8-1. That claim is rich: the presentations set out explicit guidance for agency compliance with the FOIA, they bear the DOJ's seal, and they are posted on the webpage of the DOJ's Office of *Information Policy*, the component responsible for formulating the DOJ's FOIA policy, *see* 28 C.F.R. § 0.24(b). At a minimum, the presentations strongly reinforce the existence of the challenged agency-wide policy and practice, even if the DOJ disputes it is "official" policy. *See Payne*, 837 F.2d at 491 ("The fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant [to a policy and practice claim].").

The DOJ also expends much effort arguing that the agency did conduct case-by-case balancing in responding to CREW's requests, Def.'s Mem. at 19-21, ECF No. 8-1, but that misses the point. The undisputed facts show that the agency did not produce records in any of the three cases, and the DOJ presentations explicitly permit categorical denial without any search, processing, or production. The agency's practices and its policy guidance are plainly contrary to case law. That is so for three reasons.

First, except when a *Glomar* response is warranted, the FOIA requires agencies to conduct a search for responsive records. 5 U.S.C. § 552(a)(6)(A)(i) provides that "once an agency receives a proper FOIA request, the agency shall: 'determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such

26

determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination.'" *CREW v. FEC*, 711 F.3d 180, 184 (D.C. Cir. 2013) (*CREW IV*). In making this statutorily-required "determination," an agency must "(i) *gather and review the documents*; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse," except in the case of a *Glomar* response. *Id.* at 188 & n.6 (emphasis added). Categorical denial is not an exception to the FOIA's search requirement.

Second, categorical denial pursuant to FOIA exemptions apply to categories of *information*, not *records*, so agencies must not only search but also produce records—with redactions where justified. 5 U.S.C. § 552(b) provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." FOIA thus "sets forth the broad outlines of a process for agencies to follow when responding to FOIA requests: first, identify responsive records; second, identify those responsive records or portions of responsive records that are statutorily exempt from disclosure; and third, if necessary and feasible, redact exempt information from the responsive records." *AILA*, 830 F.3d at 677. In other words, "once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive *record*—i.e., as a unit—except insofar as the agency may redact *information* falling within a statutory exemption." *Id.* (emphasis added); *see also Stolt-Nielsen Transp. Group Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempt material." (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

Third, binding precedent makes clear that agencies must conduct case-by-case balancing of public versus privacy interests when invoking Exemptions 6 and 7(C) for investigations of government officials; categorical denial in such cases is *per se* inappropriate. Exemptions 6 and 7(C) require the "balanc[ing of] the [] privacy interest against the public interest in disclosure." *CREW I*, 746 F.3d at 1091 (citations omitted). "[A] categorical approach is appropriate only if 'a case fits into a genus in which the balance characteristically tips in one direction.'" *CREW I*, 746 F.3d at 1095 (quoting *Reporters Comm.*, 489 U.S. at 776, 109 S.Ct. 1468); where a government official is known to be under investigation, "the balance does not characteristically tip in favor of non-disclosure," because "[m]atters of substantive law enforcement policy . . . are properly the subject of public concern . . . and disclosure of the requested records would likely reveal a great deal about law enforcement policy." *Id.* at 1093, 1096. "Disclosure of the records would likely reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches"; thus, a "*categorical* rule is inappropriate" in such cases, and agencies must instead employ a "case-by-case balancing" approach that considers "the rank of the public official involved and the seriousness of the misconduct alleged." *Id.* at 1093-96.[13]

What follows from these precedents is that the DOJ presentation slides are erroneous in stating that agencies need not conduct searches, process records, or conduct a case-by-case balancing of interests under Exemptions 6 and 7(C). The DOJ argues that "the response to

---

[13] The DOJ's argument under Count III that "the requests also vary in whether they include facts that would demonstrate that an investigation had even been publicly disclosed," Def.'s Mem. at 19, ECF No. 8-1, thus misses the mark. We are no longer in *Glomar* territory; because existence of record has been acknowledged, the privacy interest concerns not the *fact* that there was an investigation but the *content* of the investigation, which is subject to the *CREW I* analysis set out above.

Plaintiff's request for records relating to Congressman Matt Gaetz explains that the FBI did, in fact, conduct a search for responsive documents before making its determination." Def.'s Mem. at 20, ECF No. 8-1 (citing Compl. Ex. C, ECF No. 1-7). But this statement in the FOIA response is contradicted by a subsequent sentence that "[w]hile the existence of FBI records is acknowledged, the records are exempt from disclosure as *processing* these third party records," and not just the *production* of them, "would constitute an unwarranted invasion of personal privacy." Compl. Ex. C, ECF No. 1-7 (emphasis added); *see also* Compl. Ex. M, ECF No. 1-17 (same). Combined with the instructions in the presentation slides, it is plausible to infer that seemingly boilerplate language such as "[t]he FBI has completed its search for records subject to the FOIA that are responsive to your request," Compl. Ex. C, ECF No. 1-7, is just boilerplate, and that the agency did not in fact conduct the search.

  Similarly, in view of the assertion that "*processing* these third party records would constitute an unwarranted invasion of personal privacy," and the presentation slides' instruction not to conduct a search, it is plausible to infer that no case-by-case balancing with respect to specific information can be or has been conducted—despite the copied-and-pasted assertion that "you have not sufficiently demonstrated the public's interest in disclosure (relating to the operations and activities of the government) outweigh the personal privacy interests of these individual(s)," Compl. Ex. C, M, ECF Nos. 1-7, 1-17. In the Zinke response, the FBI didn't even make assertions about a search and balancing; upon acknowledging the existence of records due to the Interior OIG's identification of FBI records, the agency simply wrote, without qualification: "Before we can process records about other individual(s), a privacy waiver must be submitted." Compl. Ex. L, ECF No. 1-16. One cannot get a clearer statement of a practice that is contrary to the case law discussed above.

29

But even assuming that the FBI did conduct searches and did conduct case-by-case balancing, the failure to segregate and release any redacted record in any of the three responses is unquestionable, and an across-the-board legal error that supports Count III. The DOJ cannot seriously contend that all information in all responsive records, including trivial information like letterhead in the documents, are exempt under Exemptions 6 and 7(C); and even if they do make that argument, it is a factual issue reserved for summary judgment. The Complaint plausibly alleges that the DOJ has adopted an unlawful policy and practice of improper categorical denials without processing, segregating, and releasing non-exempt information in the responsive documents.

<strong>CONCLUSION</strong>

This Court should deny Defendant's motion to dismiss Counts II and III of the Complaint.

August 19, 2024                                        Respectfully submitted,

                                                       */s/ Chun Hin Tsoi*
                                                       Chun Hin Tsoi
                                                       (D.C. Bar No. 90017713)
                                                       Laura Iheanachor
                                                       (D.C. Bar No. 1782056)
                                                       Nikhel S. Sus
                                                       (D.C. Bar No. 1017937)
                                                       Citizens for Responsibility and Ethics
                                                       in Washington
                                                       1331 F St. NW, Suite 900
                                                       Washington, DC 20004
                                                       Phone: (202) 408-5565
                                                       Fax: (202) 508-5020
                                                       jtsoi@citizensforethics.org