IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br><br>*Defendant*. | Case No. 1:24-cv-01497-LLA |

**DEFENDANT'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS**

1

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I.     Count II Fails to Allege a FOIA Policy or Practice Claim. ...............................................2

         A.     Plaintiff Provides No Support for Its Novel Attempt to Group Together Varied FOIA Responses from Disparate DOJ Components. ................................3

         B.     The Six FOIA Requests that Plaintiff Cites in Support of Count II do not Demonstrate an Impermissible Policy or Practice................................................8

II.    Count III Fails to Allege that The FBI Has an Impermissible Pattern or Practice of Denying FOIA Requests for Investigations of Government Officials on Privacy Grounds. ..........................................................................................................................11

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Adionser v. U.S. Dep't of Just.*,
   811 F. Supp. 2d 284 (D.D.C. 2011) ................................................................................5

*Am. Ctr. for L. & Just. v. FBI*,
   470 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................7, 12

*Am. Ctr. for L. & Just. v. U.S. Dep't of State*,
   249 F. Supp. 3d 275 (D.D.C. 2017) ................................................................................3

*Am. Ctr. for L. & Just. v. U.S. Dep't of State*,
   289 F. Supp. 3d 81 (D.D.C. 2018) ................................................................................3

*Bartko v. U.S. Dep't of Just.*,
   898 F.3d 51 (D.C. Cir. 2018) ................................................................................8

*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) ................................................................................14

*Cause of Action Inst. v. Eggleston*,
   224 F. Supp. 3d 63 (D.D.C. 2016) ................................................................................3

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
   746 F.3d 1082 (D.C. Cir. 2014) ................................................................13, 14

*Ginarte v. Mueller*,
   534 F. Supp. 2d 135 (D.D.C. 2008) ................................................................................5

*Hammond v. Dep't of Def.*,
   No. CV 16-421 (FYP), 2021 WL 6049886 (D.D.C. Dec. 21, 2021) ........................................3

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
   895 F.3d 770 (D.C. Cir. 2018) ................................................................2, 3, 11

*Khan v. U.S. Dep't of Homeland Sec.*,
   No. 22-cv-2480-TJK, 2023 WL 6215359 (D.D.C. Sept. 25, 2023) ....................................4, 5, 7

*Lewis v. U.S. Dep't of Just.*,
   609 F. Supp. 2d 80 (D.D.C. 2009) ................................................................................14

*Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs*,
   369 F. Supp. 3d 151 (D.D.C. 2019) ................................................................................5

*Muttitt v. U.S. Cent. Command*,
   813 F. Supp. 2d 221 (D.D.C. 2011) ................................................................3, 4, 7

*Nat. Res. Def. Council, Inc. v. EPA*,
   383 F. Supp. 3d 1 (D.D.C. 2019) ................................................................................................ 3

*Pappas v. Dist. of Columbia*,
   513 F. Supp. 3d 64 (D.D.C. 2021) ..................................................................................... 10, 13

*Scudder v. CIA*,
   281 F. Supp. 3d 124 (D.D.C. 2017) ................................................................................... 12, 15

*United States v. Texas*,
   599 U.S. 670 (2023) ..................................................................................................................... 3

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ................................................................................................. 10

**Regulations**

28 C.F.R. § 16.1 *et seq* ................................................................................................................... 6

28 C.F.R. § 16.3 ............................................................................................................................... 3

32 C.F.R. § 286.3 ............................................................................................................................. 5

**Other Authorities**

Off. Of Info. Policy U.S. Dep't of Just.,
   https://www.justice.gov/oip/about-office (updated Dec. 22, 2022) ............................................ 7

U.S. Dep't of Just., Advanced Considerations Exemptions 6 & 7(C) (May 2020),
   *available at* https://www.justice.gov/d9/2023-03/exemptions_6_and_7c_advanced_-
   _january_2023.pdf ................................................................................................................... 13

## INTRODUCTION

Defendant's partial motion to dismiss raised two key questions: (1) whether, in Count II, Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW") can plausibly allege a Freedom of Information Act ("FOIA") "policy or practice" claim against the Department of Justice ("DOJ") writ large by aggregating together FOIA responses provided by various independent DOJ components; and (2) whether, in both Counts II and III, Plaintiff can plausibly allege a policy or practice claim based on only a few FOIA responses that relate to different subject matters and that received divergent responses. Plaintiff's opposition brief confirms that both questions must be answered in the negative. The two specific practices that Plaintiff alleges: (1) refusing to confirm or deny the existence of records responsive to requests about publicly-disclosed investigations (known as a Glomar response), Complaint, ¶¶ 42-45, ECF No. 1 ("Compl."), Count II, and (2) categorically denying requests for records of investigations of government officials under FOIA's Exemptions 6 and 7(C) without conducting any case-by-case balancing of the public and private interests at stake, Compl. ¶¶ 46-51, Count III, are foreclosed by the relevant caselaw and the allegations in the Complaint.

Plaintiff cannot point to a single precedent authorizing its novel theory, asserted in Count II, of bringing a FOIA policy or practice claim by aggregating FOIA responses across multiple independent components of an agency that, by regulation not challenged here, maintains a decentralized FOIA process. And, when not considered in the aggregate, Plaintiff's Count II claim relies on only one or two allegedly unlawful FOIA responses per DOJ component—a number insufficient as a matter of law to establish a policy or practice of unlawful agency conduct. Even if considered in the aggregate, Plaintiff now acknowledges that some of the responses it relies on in its Count II claim were, in fact, proper. In other words, despite citing only a handful of examples

of the supposed unlawful practice, Plaintiff now admits that some of those examples were not unlawful at all.

Plaintiff's Count III claim, despite involving only one DOJ component, the FBI, fares no better. This claim relies on only three FOIA requests and responses thereto, which also contain material differences, and Plaintiff now recognizes that some of the responses demonstrate that the FBI *did* conduct a search and a balancing of the interests. There is no policy or practice of unlawful FOIA responses here, much less a "*persistent* failure to adhere to FOIA's requirements." which is what the D.C. Circuit requires. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018) (emphasis added). Accordingly, the Court should dismiss Counts II and III of the Complaint.

## ARGUMENT

### I. Count II Fails to Allege a FOIA Policy or Practice Claim.

As the Government demonstrated in its opening brief, Count II fails to state a FOIA policy or practice claim for two independent reasons. First, each DOJ component handles their own FOIA requests and therefore Plaintiff's attempt to group together FOIA responses across multiple independent DOJ components to allege a policy or practice claim fails as a matter of law. Def.'s Mem of P. & A. in Supp. of Def.'s Partial Mot. to Dismiss ("MTD") at 11-15, ECF No. 8-1 ("MTD"). Second, the individual FOIA requests that Plaintiff relies on in support of Count II do not demonstrate a persistent pattern or practice because each request presents unique circumstances, and received its own fact-specific and unique response, *id*. at 15-18, as demonstrated by Plaintiff's detailed focus on the facts of each FOIA request. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 14-24, ECF No. 10 ("Pl.'s Opp'n"). To plead a valid policy or practice claim, a plaintiff must allege an ongoing practice amounting to a "persistent failure to adhere to FOIA's

2

requirements.'" *Nat. Res. Def. Council, Inc. v. EPA*, 383 F. Supp. 3d 1, 13 (D.D.C. 2019) (quoting *Judicial Watch*, 895 F.3d at 780). Specifically, a Plaintiff must allege "(1) repeat[ed] violation[s] of FOIA through a (2) policy or practice that is (3) 'sufficiently outrageous.'" *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018); *see also Hammond v. Dep't of Def.*, No. CV 16-421 (FYP), 2021 WL 6049886 (D.D.C. Dec. 21, 2021) ("[C]ourts look for 'sufficiently outrageous' conduct[.]"); *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (conduct is "sufficiently outrageous"). At bottom, Plaintiff must plead more than just one or two instances of allegedly unlawful conduct to state a valid policy or practice claim—a burden that Plaintiff's Count II claim does not meet. *See, e.g., Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 72 (D.D.C. 2016); *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 (D.D.C. 2011).

### A. Plaintiff Provides No Support for Its Novel Attempt to Group Together Varied FOIA Responses from Disparate DOJ Components.

As demonstrated in the government's opening brief, each DOJ component maintains its own practices and systems for responding to and processing its own FOIA requests, *see* 28 C.F.R. §§ 16.3, 16.4, and therefore policy or practice claims cannot be aggregated across multiple DOJ components any more than they can be aggregated across multiple federal agencies. MTD at 11-12. Plaintiff attempts to bring a policy or practice claim by aggregating the conduct of four different DOJ components (the Executive Office of United States Attorneys ("EOUSA"), the Office of Information Policy ("OIP"), the Criminal Division, and the Federal Bureau of Investigation ("FBI"))—but Plaintiff fails to point to even a single case that has ever adopted or endorsed such a theory. The lack of precedent for the theory speaks volumes. *See United States v. Texas*, 599 U.S. 670, 677 (2023).

3

Not only has no court ever endorsed Plaintiff's novel theory of pleading a policy or practice claim by aggregating FOIA responses across components, the only case Defendant has located where a plaintiff attempted to plead such a claim against multiple components of a single agency—in that case, the Department of Homeland Security—was rejected because the plaintiff "offer[ed] no factual allegations that support the existence of any pattern or practice as to any particular defendant." *See Khan v. U.S. Dep't of Homeland Sec.*, No. 22-cv-2480-TJK, 2023 WL 6215359, at *6 (D.D.C. Sept. 25, 2023). In *Khan*, the court treated each defendant as a separate entity, even though multiple defendants, including Customs and Border Patrol and United States Customs and Immigration Services, were components of DHS. *Id.* This is consistent with how courts have appropriately analyzed FOIA policy or practice claims on an agency-by-agency basis, rather than aggregating together allegations against multiple agencies. *See Muttitt*, 813 F. Supp. 3d at 230 (analyzing policy or practice claims by agency, not wholesale, and dismissing claims as against one defendant but not another)

In opposition, Plaintiff argues that, because the Department of Justice is the proper named defendant in a FOIA action, the policies and practices of all of its individual components may be grouped together and evaluated in the aggregate for purposes of a policy or practice claim. Plaintiff conflates two entirely different concepts when it argues that the proper named defendant in a FOIA lawsuit correlates to the available policy or practice claims that can be asserted. Pl.'s Opp'n at 6-7. While it is true that an agency can be sued for its components' FOIA violations, that does not mean that different components' responses to individual FOIA requests can be compiled together to constitute an agency practice, where each of those components, by regulation, is responsible for its own practices in processing and responding to those FOIA requests directed to it.

Plaintiff relies on cases that, analyzing the text of FOIA's cause of action provision, conclude that the appropriate named defendant in a FOIA case is the "agency" and not its components. But each of the cases that Plaintiff relies on involved the actions of individual DOJ components, which the courts analyzed throughout their opinions, and correcting the case caption was a mere formality. *See Adionser v. U.S. Dep't of Just.*, 811 F. Supp. 2d 284, 290 n.1 (D.D.C. 2011) (dismissing EOUSA, FBI, DEA, and BOP as named defendants but continuing to analyze and assess all the FOIA responses at issue); *Ginarte v. Mueller*, 534 F. Supp. 2d 135, 137 n.4 (D.D.C. 2008)(observing that "[t]he selection of DOJ or FBI as the proper party defendant is . . . of little practical consequence"). FOIA policy or practice claims must allege facts showing that a particular entity maintains an improper policy or practice. In the context of FOIA policy or practice claims, it is the factual existence of the pattern or practice that must be alleged as to a particular responsible entity—indeed it would make little sense to permit policy or practice allegations to be leveled against an actor that had no factual involvement in the underlying events. *See Khan*, 2023 WL 6215359, at *6 ("Plaintiffs offer no factual allegations that support the existence of any pattern or practice as to any particular [agency].").

Nor is Plaintiff's reliance on *Missouri Coalition for the Environment v. United States Army Corps of Engineers* ("*MCE*"), 369 F. Supp. 3d 151 (D.D.C. 2019), helpful. *See* Pl.'s Opp'n at 7-8. That case is not only unavailing for Plaintiff but in fact supports the government's argument. *MCE* involved five FOIA requests sent to various Army Corps of Engineers districts. *MCE*, 369 F. Supp. at 159. But the Army Corps of Engineers is a component of the Department of Defense, which, like DOJ, maintains a decentralized system for processing FOIA requests. *See* 32 C.F.R. § 286.3. Sending FOIA requests to multiple Army Corps of Engineers districts is thus much more akin to sending FOIA requests to multiple U.S. Attorney's Offices. Just as all of the districts are part of

5

the Army Corps of Engineers component, all of the U.S. Attorney's Offices are part of the EOUSA component. But what Plaintiff is attempting to do here is less like sending FOIA requests to multiple Army Corps of Engineers offices—rather, it is more like sending one FOIA request to the Army Corps of Engineers, one to the Navy, one to the Defense Intelligence Agency, one to the National Security Agency, and one to the United States Space Force, and then alleging a pattern or practice claim against the Department of Defense writ large based on those different components' responses to the requests. And just as there is no case law supporting a policy or practice claim by grouping together various DOJ components, there is likewise no caselaw supporting the notion that a FOIA policy or practice claim could be pled by grouping together various Department of Defense components.

Both the Department of Justice and the Department of Defense, as well as several other agencies, have regulations setting out a decentralized process for responding to FOIA requests. *See*, *e.g.*, 28 C.F.R. § 16.1 *et seq*. And although Plaintiff does not purport to directly challenge those regulations here, it is those regulations that require each component to be individually responsible for maintaining their own practices for reviewing and responding to FOIA requests, with no obligation to coordinate in processing and responding to requests in conjunction with other components. If anything, DOJ's FOIA regulations treat each individual DOJ component in many respects the same as any other government agency, imposing obligations for consultations and referrals on par with those that apply government wide. *Id*. § 16.4(d).

Finally, Plaintiff points to DOJ's Office of Information Policy's role in "manag[ing] the Department of Justice's obligations under the FOIA." Pl.'s Opp'n at 8. But the description of that role, from DOJ's website, does not provide that OIP coordinates DOJ components' FOIA practices for responding to FOIA requests such that DOJ, through OIP, could be responsible for the kind of

6

agency-wide practices alleged in the Complaint. Rather, OIP manages DOJ's FOIA obligations by adjudicating administrative appeals; handling FOIA requests to leadership offices; providing staff support for the Department Review Committee, which reviews DOJ records containing classified information; and handling the defense of certain FOIA matters in litigation. Off. of Info. Policy U.S. Dep't of Just., https://www.justice.gov/oip/about-office (updated Dec. 22, 2022) ("About the Office"). *See also* MTD at 14. Furthermore, OIP's role is government-wide, and OIP "is responsible for developing government-wide policy guidance" to help federal agencies with administering the FOIA. See About the Office. Pointing to OIP's role in FOIA policy is equally supportive of an argument that FOIA policy and practice claims can be brought against aggregated federal government agencies—the latter which has been rejected. *See Muttitt*, 813 F. Supp. 2d at 230.

Because Plaintiff's novel attempt to plead a policy or practice claim by aggregating FOIA responses from various DOJ components must fail as a matter of law, Plaintiff's Count II claim morphs from one pattern based on six FOIA responses to four patterns, one for each component, and each involving a legally insufficient one or two FOIA responses. *Id.* at 231 (An "allegation of a single FOIA violation is insufficient as a matter of law to state a claim for relief based on a policy, pattern, or practice of violating FOIA."); *Khan*, 2023 WL 6215359, at *7 (holding that two instances of improper handling of requests reflected "'merely isolated mistakes by agency officials,' which are not enough to state a claim."). No court in this circuit has ever held that just one or two allegedly unlawful FOIA responses are sufficient to plead a pattern or practice claim. *See Am. Ctr. for L. & Just. v. FBI* ("*ACLJ*"), 470 F. Supp. 3d 1, 7 (D.D.C. 2020) (three instances insufficient for a pattern).

### B. The Six FOIA Requests that Plaintiff Cites in Support of Count II do not Demonstrate an Impermissible Policy or Practice.

Defendant's opening brief showed that even if the Court were to consider the six FOIA responses pled as support for Count II's claim that DOJ improperly issues Glomar responses to requests for records about officially acknowledged investigations, those six responses do not support that claim. Two of them, relating to Rudy Giuliani, responded to requests that did not establish that the investigations at issue were officially acknowledged, making the Glomar responses proper, not improper. Another two, relating to Morehead and Zinke, did not refuse to confirm or deny the existence of responsive records—the lynchpin of a Glomar response—but rather withheld any responsive records under Exemptions 6 and 7(C). That leaves only two allegedly improper Glomar responses, hardly enough to support a pattern or practice claim. MTD at 15-18.

In opposition, Plaintiff fails to address the government's argument about the two Giuliani requests, conceding the issue. Pl.'s Opp'n at 14 ("setting aside the two Giuliani requests" and arguing that the remaining four suffice to allege a policy or practice of improper Glomar responses). The FOIA request for records relating to Assistant U.S. Attorney Morehead, like the requests that pertain to Rudy Giuliani, does not mention any public disclosure by the agency of an investigation. Merely identifying federal court decisions that criticized Morehead for misconduct is not the same as the Department of Justice finding that Morehead committed misconduct, investigating Morehead for misconduct, or officially acknowledging such an investigation. *See id*. at 14. Nor did the request indicate that the federal court decisions criticizing Morehead had been sent to DOJ and that DOJ responded to them and instituted policy changes based on them, as was the case in *Bartko v. United States Department of Justice*, 898 F.3d 51, 61 (D.C. Cir. 2018). Similarly, the government's merely confirming that it did not discipline Morehead for

8

untruthfulness does not amount to an acknowledgement that it had records related to Morehead's alleged misconduct. *See* Pl.'s Opp'n at 17.

Plaintiff also concedes that the Morehead response did not refuse to confirm or deny the existence of responsive records, but argues that it still amounted to a Glomar response because it did not say whether such records exist. *Id*. at 15. But a Glomar response does not just decline to answer the question whether responsive records exist, it withholds that information under an identified FOIA exemption. That was not done here either. Rather, the response said that any *responsive records* would be exempt from disclosure under Exemptions 6 and 7(C), not that confirming or denying whether responsive records exist would be exempt under those, or any other, exemptions. Pl.'s Ex. E, ECF No. 1-9.

One look no further than the Kelsey investigation response letter to see the difference between these two types of responses. That letter explained its different responses to different parts of the FOIA request by stating that the Criminal Division was withholding any records responsive to the part of the request regarding Josh Smith under Exemption 7(C) and then, in the next paragraph, stating that the Criminal Division was "neither confirm[ing] nor deny[ing] the existence of . . . records" responsive to the other parts of the FOIA request "pursuant to Exemptions 6 and 7(C) of the FOIA." Pl.'s Ex. H, ECF No. 1-12. The author added "Even to acknowledge the existence of law enforcement records on another individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist. Accordingly, I cannot confirm nor deny the existence of records responsive to your request." *Id*. Plaintiff argues that this latter Glomar response was improper as to records about Amanda Bunning, because a news article reported that Bunning was "listed in [Kelsey's] indictment as an individual who received

9

information from [Kelsey] and passed it on to the others who handled [Bunning's employer's] advertising." Pl.'s Opp'n at 18. But that does not mean that Bunning was under investigation, nor does it render the Glomar response improper where Plaintiff relies on a news article's representation of what an indictment says, not the indictment itself (or any other official acknowledgment). *See*, *e.g.*, *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) ("a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain"). Indeed, the nuanced response, treating records about Josh Smith differently and not asserting a Glomar response over that portion of the request, belies a policy or practice of making improper Glomar assertions.

Like the Morehead response, the response to the request related to former Secretary of the Interior Zinke stated that any responsive records would be exempt from disclosure, under Exemption 7(C), and was not a Glomar response. Pl.'s Ex. I, ECF No. 1-13. Furthermore, Plaintiff acknowledges that the Department of Interior could not waive DOJ's ability to invoke a FOIA exemption, and thus Interior's official acknowledgement of an investigation into Secretary Zinke would not make DOJ's Glomar response improper. Pl.'s Opp'n at 20. While Plaintiff now claims the response was improper due to a lack of foreseeable harm, *id*. at 20-21, that is not the policy or practice theory that the Zinke response is allegedly proof of for purposes of Count II.[1]

Plaintiff's lengthy discussion of the specific factual circumstances surrounding each of its FOIA requests, *id*. at 14-22, only reinforces the government's argument that each request and response is sufficiently factually distinct that they are not proof of a policy or practice. Plaintiffs'

---

[1] To the extent Plaintiff now attempts to move the allegations regarding the Morehead and Zinke requests and responses to support Count III instead, Pl.'s Opp'n at 15 n.8, this represents an improper attempt to amend the Complaint through an opposition brief. *Pappas v. Dist. of Columbia*, 513 F. Supp. 3d 64, 81 n.5 (D.D.C. 2021) ("[A] party cannot 'amend his or her complaint by the briefs in opposition to a motion to dismiss.'").

10

brief reads like a challenge to each individual FOIA request in a typical FOIA lawsuit challenging an agency's response, rather than a policy or practice case. Plaintiff's burden here is not to litigate the merits of each individual FOIA request at issue, but instead to allege facts plausibly showing that the FOIA responses at issue are part of a pattern of persistent failure to adhere to FOIA's requirements and are not simply isolated instances of mistakes by agency officials. *Judicial Watch, Inc.*, 895 F.3d at 780. Plaintiff attempts to flip the pleading burden on its head and argues that the Defendant "wrongly faults" CREW for failing to allege facts showing that the incidents referenced in the complaint are part of a pattern, instead of isolated instances of agency misconduct. Pl.'s Opp'n at 24. But at the motion to dismiss stage, it is Plaintiff's burden to plead facts that plausibly state a claim for relief. Here, Plaintiff includes insufficient factual allegations to tip its theory that these incidents are part of a pattern of FOIA noncompliance—as opposed to merely isolated instances or exceptions—from possible to plausible.

II. **Count III Fails to Allege that The FBI Has an Impermissible Pattern or Practice of Denying FOIA Requests for Investigations of Government Officials on Privacy Grounds.**

Count III likewise fails to allege a policy or practice of providing unlawful FOIA responses—specifically, of "categorically denying . . . requests for records of investigations of government officials under FOIA's Exemptions 6 and 7(C) without conducting any case-by-case balancing of the public and private interests at stake." Compl. ¶ 47. Here Plaintiff relies on only three FOIA requests, and two of those responses make clear that the FBI *did* conduct a balancing by stating that Plaintiff had "not sufficiently demonstrated that the public's interest in disclosure (relating to the operations and activities of the government) outweigh the personal privacy interest of these individual(s)." Pl.'s Ex. C, ECF No. 1-7; *see also* Pl.'s Ex. M, ECF No. 1-17 (stating that Plaintiff had "not sufficiently demonstrated that the public's interest in disclosure (relating to the operations and activities of the government) outweigh the personal privacy interest of an

11

individual."). *See Scudder v. CIA*, 281 F. Supp. 3d 124, 127 (D.D.C. 2017) (finding that facts pled in complaint undercut the basis of the plaintiff's policy or practice claim).

In light of this deficiency, Plaintiff shifts theories and claims that the problem is that the FBI did not produce records in any of the three cases. But that's not what Count III complains about, and it is not surprising, let alone facially unlawful, to withhold in full all records of an FBI investigation into an individual based on the conclusion that disclosure of the records would cause an unwarranted invasion of that person's privacy. Plaintiff may dispute that balancing of interests, and is free to do so in court in the individual FOIA cases, but it has not demonstrated a pattern or practice of unlawful FOIA responses.

Plaintiff also ignores material differences between the three responses, such as the fact that the FBI's response to the request for records about state senator Mark Finchem also relied on FOIA's Exemption (7)(A) to withhold in full responsive records, explaining that "[t]he records responsive to your request are law enforcement records; there is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information could reasonably be expected to interfere with enforcement proceedings." Pl.'s Ex. M, ECF No. 1-17. Plaintiff also ignores that the requests vary in terms of the information provided about the public interest, which would affect the balancing of interests conducted. *See* MTD at 19. Because the requests and responses underlying Count III are not sufficiently similar, they do not support Plaintiff's pattern or practice claim. *See*, *e.g.*, *ACLJ*, 470 F. Supp. 3d at 6-7 (analyzing similarity of requests and similarity of responses and finding that three "strikingly different" requests and "variation in the three" responses failed to adequately allege policy or practice claim).

Plaintiff for the first time attempts to argue that the PowerPoint slide that it referenced in passing in the Complaint, Compl. ¶ 33, is the specific unlawful policy that it challenges in this

12

lawsuit. Pl.'s Opp'n at 28; *see also* MTD at 8. To the extent Plaintiff now attempts to rely on this PowerPoint slide as evidence of the policy or practice that Plaintiff purports to challenge in Count III, that was not specified in the Complaint and cannot be added through an opposition brief. *Pappas*, 513 F. Supp. 3d at 81 n.5. In any event, Plaintiff seizes on one phrase of one slide in a deck consisting of 29 slides, many of which Plaintiff no doubt agrees with. *See* U.S. Dep't of Just., Advanced Considerations Exemptions 6 & 7(C) (May 2020), *available at* https://www.justice.gov/d9/2023-03/exemptions_6_and_7c_advanced_-_january_2023.pdf. For example, slide 20 cites *Citizens for Responsibility & Ethics in Washington v. United States Department of Justice* ("*CREW I*"), 746 F.3d 1082, 1093 (D.C. Cir. 2014), for the proposition that there is a weighty public interest in shining a light on the FBI's investigation of major political corruption and in DOJ's decision not to prosecute a prominent member of Congress. *See also* Pl.'s Opp'n at 28. The allegedly offending phrase is in slide 28, and merely states that generally, an agency can issue a categorical denial without first conducting a search. Plaintiff does not disagree with the rest of that slide, which states that an agency can issue a Glomar response without conducting a search, and that if a Glomar response or categorical denial is not appropriate, the agency generally needs to search for and process responsive records. *Id*. at 26-27.

  Nor is Plaintiff correct that an agency may never issue a categorical denial without first searching for and processing any responsive records. Plaintiff relies on general requirements about an agency's determination in response to a FOIA request that do not speak to categorical denials. *Id*. There is indeed caselaw support for the proposition that a search is not always required before issuing a categorical denial of records about third-parties in law enforcement files. *See, e.g.*, *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (holding that the FBI did not need to conduct a search for records about third parties, absent proof of death, a privacy waiver, or articulation by

13

the requester of a public interest that outweighs any privacy interest, because a search for such records "would have added only information that we have concluded is protected by Exemption 7(C)."); *Lewis v. U.S. Dep't of Just.*, 609 F. Supp. 2d 80, 85 (D.D.C. 2009) (affirming categorical denial without search for investigatory records about a third-party individual where plaintiff did not demonstrate a public interest to overcome otherwise exempt third-party information; "whether defendant actually searched for records . . . is immaterial . . . because that refusal deprived [plaintiff] of nothing to which he is entitled") (internal quotations and citations omitted). And if an agency does not have to search for responsive records, surely it does not have to process or produce them. Plaintiff also attempts to argue that a categorical denial under Exemption 7(C) is never appropriate, but in the same breath cites caselaw recognizing that a categorical approach is, in fact, appropriate if "a case fits into a genus in which the balance characteristically tips in one direction." Pl.'s Opp'n at 28 (quoting *CREW I*, 746 F.3d at 1095).[2]

Moreover, as noted in Defendant's opening brief, one of the three FBI responses says that the FBI did conduct a search. MTD at 20; Pl.'s Ex. C, ECF No. 1-7. Plaintiff's response is that "it is plausible to infer" that this was "just boilerplate, and that the agency did not in fact conduct the search." Pl.'s Opp'n at 29. That is indeed not plausible, and Plaintiff cites no evidence in support of this spurious speculation. Rather, this response, like the responses that show that the FBI did conduct a balancing, undermines any policy or practice claim based on a failure to conduct searches. *See Scudder*, 281 F. Supp. 3d at 127.

---

[2] One of the FOIA requests that Plaintiff relies on clearly fits this genus—Plaintiff does not dispute that, although there is public disclosure that the individual involved, Mark Finchem, had had contact with "DOJ" there is no public disclosure that Finchem had been interviewed by FBI, thus his privacy interest in "keeping secret the fact that he was the subject of an FBI investigation" remained alive and well. *CREW I*, 746 F. Supp. at 1092.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendant's opening brief, the Court should dismiss Counts II and III of the Complaint for failure to state a claim for which relief can be granted.

Dated: September 9, 2024

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director
Civil Division, Federal Programs Branch

/s/ Anna Deffebach
ANNA DEFFEBACH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-8356
Fax: (202) 616-8470
E-mail: Anna.L.Deffebach@usdoj.gov
D.C. Bar No. 241346

*Counsel for Defendant*