**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

    *Plaintiff*,

  v.

U.S. DEPARTMENT OF JUSTICE,

    *Defendant*.

Civil Action No. 24 - 1497 (LLA)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed this suit pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records related to the now-closed criminal investigation of former Congressman Matt Gaetz (Count I).  ECF No. 1. CREW also alleges that the Department of Justice ("DOJ") violated FOIA by implementing policies of refusing to confirm or deny the existence of investigation-related records (known as a *Glomar* response) (Count II) and by categorically withholding records without conducting a case-by-case analysis (Count III).  *Id.*  DOJ has filed a motion to dismiss Counts II and III.  For the reasons explained below, the court grants the motion in part and dismisses Count III.

## I.  FACTUAL BACKGROUND

The following factual allegations drawn from CREW's complaint, ECF No. 1, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  CREW is a non-profit, non-partisan organization "committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring the integrity of government officials and agencies."  ECF

No. 1 ¶ 6.  To further these goals, CREW frequently submits FOIA requests to various government agencies.  *Id.*

### A.    DOJ's Investigation of Former Congressman Matt Gaetz

In 2020, DOJ began investigating then-Congressman Gaetz for potential violations of federal sex-trafficking laws and obstruction of justice.  *Id.* ¶ 17.  DOJ launched the investigation after Joel Greenberg—a suspected associate of Mr. Gaetz's who had pleaded guilty to the sex-trafficking of underage girls—indicated that he and Mr. Gaetz had given underage women "cash or gifts in exchange for sex."  *Id.* ¶ 18 (quoting Paula Reid & Paul LeBlanc, *Matt Gaetz Associate Has Been Cooperating with Justice Department Since Last Year*, CNN (Apr. 14, 2021), https://perma.cc/ETR7-5M9S).  After several years, DOJ informed Mr. Gaetz in February 2023 that it would not press charges against him.  *Id.* ¶ 20.  That same month, CREW submitted a FOIA request to the Federal Bureau of Investigation ("FBI") and DOJ's Criminal Division seeking

> all records related to the now-closed investigation conducted by DOJ and the Federal Bureau of Investigation ("FBI") of Rep. Matt Gaetz (R-FL) that are not covered by grand jury secrecy pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, including but not limited to DOJ's decision not to bring criminal charges against Rep. Gaetz.

*Id.* ¶ 22; ECF No. 1-5.  CREW sought the records because they would "help explain why Rep. Gaetz—a prominent member of Congress—was not charged with any crime despite public reporting suggesting an abundance of evidence that he likely violated sex-trafficking laws and the conviction of his close associate on similar charges."  ECF No. 1 ¶ 23 (quoting ECF No. 1-5, at 3). It further argued that "[t]he public has a vital interest in learning whether the decision not to prosecute Rep. Gaetz was motivated, even in part, by considerations apart from the sufficiency of the evidence against him."  *Id.* (quoting ECF No. 1-5, at 3).

In June 2023, DOJ's Criminal Division acknowledged receipt of CREW's FOIA request and extended the response time because it contained "unusual circumstances." *Id.* ¶ 25; ECF No. 1-6, at 1 (citing 5 U.S.C. § 552(a)(6)(B)(i) through (iii)).[1]  CREW has yet to receive a determination on its request from the Criminal Division.  ECF No. 1 ¶ 29.

In November 2023, the FBI categorically denied CREW's request pursuant to FOIA Exemptions 6 and 7(C).  ECF No. 1 ¶ 26; ECF No. 1-7; *see* 5 U.S.C. § 552(b).[2]  While the FBI acknowledged that responsive records existed, it declined to reveal them because doing so "would constitute an unwarranted invasion of personal privacy."  ECF No. 1 ¶ 26 (quoting ECF No. 1-7, at 1).  CREW appealed the FBI's decision and is still waiting on a resolution.  *Id.* ¶¶ 27-28.

### B.    DOJ Components' Responses to FOIA Requests Concerning Criminal Investigations

In addition to the FOIA request relating to Mr. Gaetz's investigation, four of DOJ's divisions, or components, have responded to several of CREW's FOIA requests for records concerning publicly disclosed investigations by neither confirming nor denying the existence of responsive records (a "*Glomar*" response).  *Id.* ¶ 31.[3]  These responses usually contain the following (or similar) language:

> To the extent that non-public responsive records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably

---

[1] This citation is to the first substantive page of the ECF document, not the cover page.

[2] Exemption 6 carves out "personnel . . . [,] medical . . . [,] and similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Meanwhile, Exemption 7(C) excuses disclosure of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

[3] The four components at issue in the complaint are "the Criminal Division, the Executive Office [for] United States Attorneys, the Office of Information Policy, and the FBI." ECF No. 1 ¶ 43.

be expected to constitute an unwarranted invasion of personal
privacy . . . .  Because any non-public records responsive to your
request would be categorically exempt from disclosure, this Office
is not required to conduct a search for the requested records.

ECF No. 1-9, at 1; *see* ECF Nos. 1-12, 1-13.  Six of CREW's requests produced such responses:

- Office of Information Policy (February 2021): request for records relating to former New York City Mayor Rudy Giuliani.  ECF No. 1-11.

- Executive Office for United States Attorneys (February 2021): request for records relating to former New York City Mayor Rudy Giuliani.  ECF No. 1-10.

- Executive Office for United States Attorneys (April 2024): request for records relating to former Assistant U.S. Attorney Terra Morehead.  ECF No. 1-9.

- Criminal Division (March 2022): request for records relating to former Secretary of the Interior Ryan Zinke.  ECF No. 1-13.

- Criminal Division (April 2023): request for records relating to former Tennessee State Senator Brian Kelsey.  ECF No. 1-12.

- FBI (September 2022): request for records relating to former Pennsylvania State Senator Doug Mastriano.  ECF No. 1-14.

DOJ's components have also issued categorical denials of similar requests by CREW under FOIA
Exemptions 6 and 7(C) because CREW apparently had not "sufficiently demonstrated that the
public's interest in disclosure (relating to the operations and activities of the government)
outweigh[s] the personal privacy interests of these individual(s)."  ECF No. 1 ¶ 32; *see* ECF
Nos. 1-7, 1-17.  According to CREW, DOJ's components "issued these categorical denials without
conducting any case-by-case balancing of the public and private interests at stake, and without
processing the records and releasing any reasonably segregable, non-exempt portions."  ECF No. 1
¶ 32.  Three of CREW's requests allegedly produced this response:

- Department of the Interior, referred to the FBI (September 2022): request for records relating to former Secretary of the Interior Ryan Zinke.  ECF No. 1-16.

- FBI (October 2022): request for records relating to former Arizona State Senator Mark Finchem.  ECF No. 1-17.

▪ FBI (February 2023): request for records relating to former U.S. Congressman Matt Gaetz.  ECF No. 1-5.

Throughout the relevant time period, DOJ maintained on its website a slide deck stating that "[g]enerally, an agency can issue a *Glomar* response or categorical denial without first conducting a search."  ECF No. 1 ¶ 33 (italics added) (quoting Dep't of Just., "Advanced Considerations Exemptions 6 & 7(C)" (May 2020), https://perma.cc/CB2S-R7CJ; Dep't of Just., "Advanced Considerations Exemptions 6 & 7(C)" (Jan. 2023), https://perma.cc/7Z9F-N5FY).

CREW currently has several pending FOIA requests before DOJ concerning records related to publicly disclosed investigations and intends to submit similar requests in the future.  *Id.* ¶ 35.

## II.    PROCEDURAL HISTORY

CREW filed a FOIA complaint against DOJ in May 2024, roughly fifteen months after it first requested documents related to Mr. Gaetz's investigation.  ECF No. 1.  CREW alleged three distinct counts under FOIA.  First, it claimed that DOJ had wrongfully withheld responsive records relating to the investigation of Mr. Gaetz (Count I).  *Id.* ¶¶ 36-41.[4]  Next, it argued that DOJ and its various divisions had improperly adopted a blanket policy of issuing *Glomar* responses for any records request related to publicly disclosed investigations (Count II).  *Id.* ¶¶ 42-45.  Finally, it alleged that DOJ and its various divisions—most notably, the FBI—had also improperly adopted a policy of categorically denying such requests "without conducting any case-by-case balancing of the public and private interests at stake" (Count III).  *Id.* ¶¶ 46-51.  CREW sought declaratory and injunctive relief.  *Id.* at 11-12.

---

[4] The court does not opine on Count I of CREW's complaint because it is outside the scope of the present motion to dismiss.

In July 2024, DOJ moved to dismiss Counts II and III under Federal Rule of Civil Procedure 12(b)(6), arguing that neither count adequately stated a claim for relief.  ECF No. 8. The matter is now fully briefed.  ECF Nos. 8, 10, 11.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice.  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  The court also does not accept legal conclusions or inferences that are unsupported by the facts.  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  *N. Am. Butterfly Ass'n v.*

*Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

### B.    FOIA

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Congress nonetheless included nine exemptions to disclosure that "are intended to balance the public's interest in governmental transparency against the legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Tipograph v. U.S. Dep't of Just.*, 83 F. Supp. 3d 234, 238 (D.D.C. 2015) (alteration in original) (internal quotation marks omitted) (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)). Additionally, in certain circumstances, an agency "may refuse to confirm or deny the existence of [responsive] records." *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. Cent. Intel. Agency*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). This so-called "*Glomar*" response "is valid 'if the fact of the existence or nonexistence of agency records [itself] falls within a FOIA exemption.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf*, 473 F.3d at 374).

### IV.    DISCUSSION

A FOIA "policy or practice" claim is a narrow exception to the general rule that FOIA requests must be litigated independently.[5] It permits a plaintiff to argue "that an agency policy or

---

[5] Various courts in this Circuit have used the terms "policy or practice" and "pattern or practice" interchangeably. This court will use "policy or practice," which is the D.C. Circuit's chosen terminology. *See Judicial Watch*, 895 F.3d at 774.

practice will impair [its] lawful access to information in the future." *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) ("*ACLJ I*") (quoting *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012)). A plaintiff can establish such a claim by plausibly alleging "that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) ("*Muttitt II*") (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)). The policy can be "informal, rather than articulated in regulations or an official statement." *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 (D.D.C. 2011) ("*Muttitt I*"). "[I]solated" incidents of noncompliance do not suffice, *Payne Enters.*, 837 F.3d at 491, so "a single FOIA violation is insufficient as a matter of law to state a claim for relief based on a policy, pattern, or practice of violating FOIA," *Muttitt I*, 813 F. Supp. 2d at 231.

Count II alleges that DOJ and its components employed an improper policy of issuing *Glomar* responses to any request for records relating to publicly disclosed investigations. Relatedly, Count III alleges that the FBI has an improper policy of categorically denying such requests under Exemptions 6 and 7(C) without conducting any case-by-case balancing. The court addresses both claims in turn.[6]

---

[6] There is a fine distinction between these two claims. A *Glomar* response conceals whether certain records exist, whereas a categorical denial may acknowledge a record's existence while prohibiting the disclosure of its content. *See Elec. Priv. Info. Ctr. v. Dep't of Just.*, 320 F. Supp. 3d 110, 117 (D.D.C. 2018) (explaining that the categorical withholding of certain records pursuant to a FOIA exemption "depends . . . 'on the factual content and purpose of the requested document'" (quoting *Dow Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 575 (D.C. Cir. 1990))).

### A.    Count II

DOJ's primary argument on Count II is that the responses to CREW's requests were too varied to suggest a policy or practice. The court deconstructs this argument into three parts. First, it examines whether the actions of DOJ's various components can be aggregated to reveal an agency-wide policy. Second, it determines whether the requests were sufficiently related to form a coherent pattern. And third, it addresses whether that pattern constituted an actual agency policy to violate FOIA.

### 1.    Whether the actions of DOJ's components can form a single policy or practice

It is undisputed that DOJ is an "agency" within the meaning of FOIA. *See* 5 U.S.C. § 552(f) (defining an "agency" as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government"). Under DOJ's regulations, "[t]he Department has a decentralized system for processing [FOIA] requests, with each component handling requests for its [own] records." 28 C.F.R. § 16.1(c). A "component" is "each separate bureau, office, division, commission, service, center, or administration that is designated by the Department as a primary organizational entity." *Id.* § 16.1(b). The Office of Information Policy, Executive Office for United States Attorneys ("EOUSA"), Criminal Division, and FBI are all components of DOJ. *See id.*; ECF No. 1 ¶ 43.

Because separate and isolated incidents cannot support a policy-or-practice claim, Count II's survival largely depends on whether the court can aggregate the actions of DOJ's components to reveal a single pattern. This count focuses on six requests across four components: one request to the Office of Information Policy, ECF No. 1-11; two requests to the EOUSA, ECF Nos. 1-9, 1-10; two requests to the Criminal Division, ECF Nos. 1-12, 1-13; and one request to the FBI, ECF

No. 1-14.  Without aggregation, CREW has alleged no more than two instances of challenged conduct by a single component, which is likely insufficient to establish a consistent policy or practice.  *See Khan v. U.S. Dep't of Homeland Sec.*, No. 22-CV-2480, 2023 WL 6215359, at *7 (D.D.C. Sept. 25, 2023) (holding that an agency's failure to respond to two requests was insufficient to support a policy-or-practice claim).

DOJ argues that aggregation is impossible because each component "is individually responsible for processing and responding to its own FOIA requests and maintains its own practices and records systems for responding to those requests."  ECF No. 8-1, at 11.  As a general matter, DOJ is correct that courts tend to treat each of its components separately when analyzing FOIA document requests.  *See, e.g.*, *Gordon v. Courter*, 118 F. Supp. 3d 276, 285-86 (observing that the document databases of the FBI and the EOUSA "are not within the Criminal Division's control").  But while that may be true for individual FOIA requests, which must go "directly to the FOIA office of the component that maintains the records being sought," 28 C.F.R. § 16.3(a)(1), it does not preclude a policy-or-practice argument if each DOJ component follows the same across-the-board DOJ guidance on how to handle certain types of requests.

DOJ cites *Muttitt I* for the proposition that "FOIA pattern or practice claims cannot be pled by alleging conduct across multiple agencies."  ECF No. 8-1, at 11-12 (citing *Muttitt I*, 813 F. Supp. 2d at 230).  But the court in *Muttitt I* never explicitly espoused DOJ's suggested rule.  Instead, it merely evaluated two distinct policy-or-practice claims against two entirely different agencies: the Department of State and the Department of the Treasury.  *Muttitt I*, 813 F. Supp. 2d at 223.  The plaintiff did not allege, and the court accordingly did not consider, whether both agencies *collectively* had a unified policy to violate FOIA.  *See* First Am. Compl., *Muttitt I*, No. 10-CV-202, 2010 WL 9931563 (D.D.C. May 3, 2010).

This court therefore declines to read *Muttitt I* as applying to multiple components within one agency, as DOJ advocates. Even taking DOJ's characterization of *Muttitt I* at face value, the opinion's purported principle—that a single policy-or-practice claim cannot lie against multiple agencies—makes sense when the "multiple agencies" have no connection at all. But the same logic does not hold for components within a larger agency. Neither the Department of State nor the Department of the Treasury have any overlapping structure, chains of command, or personnel. Here, in contrast, DOJ is the overarching agency that holds its various components together, and it therefore can exercise control over its components' FOIA policies. Components are, after all, parts of a whole—together, they compose a single entity. *See* Component, *Oxford English Dictionary* (2d ed. 1991) (defining "component" as a "constituent element or part").[7]

The court is more persuaded by CREW's reliance on *Missouri Coalition for the Environment v. U.S. Army Corps of Engineers*, 369 F. Supp. 3d 151 (D.D.C. 2019). *See* ECF No. 10, at 12-13. There, an environmental organization submitted six FOIA requests to two separate districts of the U.S. Army Corps of Engineers (the "Corps"), seeking information about Clean Water Act permits. *Id.* at 154-56. The two districts—St. Louis and Little Rock—each had their own FOIA procedures. *See id.* at 156-57 (explaining that, during the relevant time period, the St. Louis district independently "re-evaluat[ed] . . . its FOIA processes and procedures"). For five of the six requests, the two districts "improperly withheld the same types of documents under

---

[7] The only other case DOJ relies on for this proposition is *Khan*, but it does not help the agency. While the court in *Khan* rejected the plaintiffs' policy-or-practice claim against several agency components, it did not once discuss the validity of aggregation. *See* 2023 WL 6215359, at *6-7. Instead, the court simply dismissed the claim because the plaintiffs had not identified more than two requests that the defendants had failed to adjudicate. *Id.* at *6. To be sure, the *Khan* court did cite *Muttitt I* for the idea that "pattern-and-practice claims [are analyzed] by agency, not wholesale." *Id.* (citing *Muttitt I*, 813 F. Supp. 2d at 230). But, as already explained, the *Muttitt I* court only addressed claims against entirely different agencies and had no occasion to discuss aggregation at all.

Exemption 5" in clear contravention of FOIA. *Id.* at 159. Aggregating the actions of both districts, the court held that the Corps' "record of repeated and almost identical FOIA violations l[ed] to the unavoidable conclusion that its decisions resulted from a policy or practice." *Id.* at 160.

Critically, the Corps had argued—much like DOJ does here—that "the St. Louis and Little Rock Districts must be treated separately, and that [the plaintiff] must show that each district independently had a policy or practice that violated FOIA." *Id.* at 161. The court rejected that contention, explaining:

> [T]he Court fails to see why [the plaintiff]'s allegations must be partitioned as the Corps insists. [The plaintiff] does not limit its claim for relief to just those two districts in its complaint, and instead specifically alleges that the Corps *as a whole has employed the unlawful policy or practice at issue in this suit* . . . . If anything, the fact that [the plaintiff] received unlawful responses from two different Corps districts only further evidences that the Corps maintained a policy or practice and that the decisions to withhold the records at issue were not isolated mistakes.

*Id.* (emphasis added).

DOJ claims that *Missouri Coalition* supports *its* position because "the [Corps] is a component of the Department of Defense, which, like DOJ, maintains a decentralized system for processing FOIA requests." ECF No. 11, at 5. In its view, the Corps is akin to the Criminal Division or the FBI, meaning that the St. Louis and Little Rock districts are essentially *subcomponents* of a component. From DOJ's perspective, only the component level matters. And unless CREW can prove a policy or practice by a component, its policy-or-practice claim fails by that metric.

In the court's view, however, this distinction makes no difference. By debating where the Corps lies in the agency hierarchy, DOJ misses the key lesson from *Missouri Coalition*. That case explains that the actions of the subdivisions of an agency entity, wherever they may sit on an organizational chart, can still demonstrate the existence of a uniform policy or practice. While the St. Louis and Little Rock districts were subdivisions of the Corps, the reasoning of *Missouri*

*Coalition* applies with equal force to the composite components of an agency. Both districts had separate—or "decentralized"—FOIA procedures, *see generally* Def.'s Mot. for Summ. J., *Mo. Coal.*, No. 18-CV-663, 2018 WL 11269750 (D.D.C. July 27, 2018) (describing both districts' separate reviews of their own procedures), but that did not stop the court from aggregating their practices. Just as the actions of *sub*components can indicate a component's overarching policy, the actions of components can indicate an agency's overarching policy. After all, FOIA is primarily concerned with agencies, "not . . . agency components." *Ginarte v. Mueller*, 534 F. Supp. 2d 135, 137 n.4 (D.D.C. 2008). At base, DOJ cannot provide any sensible reason why *Missouri Coalition*'s logic would not apply to the agency-wide level.

Examining the converse scenario further undergirds CREW's claim. DOJ seems to implicitly admit that if one of its components were engaging in a blanket policy of asserting *Glomar* responses, such a policy could be actionable. *See* ECF No. 8-1, at 11-12 (arguing that a policy-or-practice claim must be evaluated against an individual component). So, if *multiple* components carried out the same blanket policy *at the direction of a head agency*, then that direction should be actionable against the head agency, too. It may very well be the case that CREW would have valid policy-or-practice claims against the Office of Information Policy, EOUSA, Criminal Division, and FBI separately. But that does not preclude CREW from suing the entire DOJ under the same theory, provided that it sufficiently alleges DOJ has promulgated a universal practice that its components all follow. And against such a claim, DOJ cannot rely on its own regulations—which treat its components as miniature agencies—to shield itself while allegedly orchestrating violations of FOIA.

DOJ's counterarguments are not persuasive. The agency mostly reiterates the general principle that FOIA requests are directed to (and processed by) each of its constituent components.

*See* ECF No. 8-1, at 12-14.  But, as alluded to above, the routine treatment of specific one-off FOIA requests does not dictate the outcome of CREW's policy-or-practice claim.  It makes sense to treat an agency's components separately for individual requests when they each have different collections of documents.  *See Gordon*, 118 F. Supp. 3d at 285-86 (treating the Criminal Division, FBI, and EOUSA separately when analyzing a specific FOIA request because each component controlled its own document database); *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 447 (D.C. Cir. 2023) (same); *cf. Chase v. U.S. Dep't of Just.*, 301 F. Supp. 3d 146, 153-54 (D.D.C. 2018) (recognizing that a component may refer materials to a different component to determine whether release is proper).  But the same principle does not logically apply when the plaintiff alleges a general, non-individualized policy of violating FOIA that transcends multiple components, as CREW does here.  Such a claim has nothing to do with which components possess which documents.

DOJ's emphasis on the individuality of its components also conveniently overlooks the fact that DOJ is, itself, an agency.  Just as one of its components can be guilty of instituting a pattern or practice, so too can DOJ writ large.  If DOJ has a global policy that applies to all its constituent parts or refuses to correct its components' "noncompliance with the FOIA," CREW may be "entitle[d] . . . to declaratory relief."  *Payne Enters.*, 837 F.2d at 494.  The court is not required to look the other way simply because the evidence of such a policy is scattered across several subdivisions of a single agency.  CREW may therefore aggregate the actions of DOJ's components to prove its case.

Taken together, then, CREW has identified six instances of potentially violative conduct across the four DOJ components.  That is numerically sufficient to show a pattern for purposes of a motion to dismiss.  *See Mo. Coal.*, 369 F. Supp. 3d at 159-61 (finding a policy or practice where

the plaintiff cited five instances of identical, violative conduct); *Muckrock, LLC v. Cent. Intel. Agency*, 300 F. Supp. 3d 108, 135-37 (D.D.C. 2018) (four instances). Whether those instances are substantively similar enough to demonstrate a policy or involve actual FOIA violations, however, remains to be resolved.

### 2.    Whether CREW's six FOIA requests and their corresponding responses are sufficiently related

DOJ next argues that, even if the court aggregates the six requests at issue under Count II, those requests do not "all relat[e] to the same subject matter" and therefore cannot form a consistent policy. ECF No. 8-1, at 15 (alteration in original) (quoting *Judicial Watch*, 895 F.3d at 782). Again, the court disagrees.

For a pattern to be substantively sufficient, it should "concern[] repeated requests for a narrowly[] defined class of documents." *Am. Ctr. for L. & Just. v. Fed. Bureau of Investigation*, 470 F. Supp. 3d 1, 6 (D.D.C. 2020) ("*ACLJ II*"). The D.C. Circuit "has never articulated a 'single subject' or 'single type of request' requirement for a policy-or-practice claim," but "the similarity of the underlying requests" plays a key role in discerning a consistent pattern. *Id.* Relatedly, the "applica[tion] of a particular exemption to a particular category of documents," *id.*, or "employ[ment of] the same non-responsive conduct," *Judicial Watch*, 895 F.3d at 779, can also indicate the absence of "isolated mistakes," *Payne Enters.*, 837 F.2d at 491. Here, all six of CREW's requests were about the same subject matter (publicly disclosed investigations into third parties) and triggered the same exemptions in response (Exemptions 6 and 7(C)). *See* ECF Nos. 1-9 through 1-14.

DOJ counters that CREW sought records on "four different individuals . . . relating to completely different investigations." ECF No. 8-1, at 16. But the requests need not be identical in every respect to generate a pattern. As long as they involve the same "subject matter," that is

enough. *Judicial Watch*, 895 F.3d at 782. In the court's view, changing the specific target of a government investigation does not put the request in another realm. For example, each of the requests in *Judicial Watch* was for records on "federally funded VIP travel," specifically, "public expenditures for travel by President Obama and the First Lady, Vice President Biden, and former President Carter." 895 F.3d at 776. It did not matter to the court that the requests involved different individual officials, *contra* ECF No. 8-1, at 16 (arguing that the requests "involve four different individuals"), or different destinations, *contra id.* (arguing that the requests "involve . . . completely different investigations"). Each request shared a common, relatively narrow topic of federally funded VIP travel. *Judicial Watch*, 895 F.3d at 776. Here, CREW seeks documents relating to publicly disclosed investigations of third parties (specifically, four government officials). Because the D.C. Circuit "has never articulated a 'single subject' or 'single type of request'" rule, *ACLJ II*, 470 F. Supp. 3d at 6, the mere fact that CREW pursued similar documents for different investigation targets does not change the court's analysis.[8]

DOJ next argues that the responses to the requests were also "materially different." ECF No. 8-1, at 17-18. Specifically, it claims that the inquiries into the investigations of Assistant U.S. Attorney Morehead and Secretary Zinke did "not [produce] *Glomar* responses at all, but instead rel[ied] on FOIA Exemptions 6 and 7(C) to withhold responsive documents." *Id.* at 17 (italics added) (citing ECF Nos. 1-9, 1-13). The court disagrees. In response to the first request concerning Assistant U.S. Attorney Morehead, the EOUSA wrote that "[*t*]*o the extent that non-public responsive records exist*," they "*would* be categorically exempt from disclosure" under Exemptions 6 and 7(C). ECF No. 1-9, at 1 (emphases added). Furthermore, the EOUSA's letter

---

[8] As CREW convincingly observes, the use of "the same improper *Glomar* response to [its] requests relating to *different* officials and investigations" may actually strengthen its claim that DOJ employs a consistent, blanket FOIA practice for all similar request types. ECF No. 10, at 12.

explained that it was "not required to conduct a search for the requested records." *Id.* While this response stops short of explicitly invoking the *Glomar* language, it all but refuses to confirm or deny the existence of CREW's requested records. The letter's language is phrased hypothetically ("[t]o the extent that non-public records exist" and "would be categorically exempt") and essentially admits that the EOUSA did not even attempt to locate any responsive documents ("this Office is not required to conduct a search"). *Id.* At the motion-to-dismiss stage, the court draws the reasonable inference that these replies were, in fact, *Glomar* responses.

The Criminal Division's reply to CREW's request for documents relating to Secretary Zinke produced a nearly identical response. *See* ECF No. 1-13, at 1 ("To the extent that non-public responsive records exist . . . [they] would be categorically exempt from disclosure, [so] this Office is not required to conduct a search[.]"). In fact, the *only* difference is that the Criminal Division did not cite Exemption 6 (which, like Exemption 7(C), protects against unwarranted invasions of privacy). *Id.* In all other respects, the two components issued virtually verbatim responses. Like with the EOUSA's response above, the Criminal Division only addressed the records hypothetically without confirming or denying their existence. *Id.*

Minor discrepancies are not enough to warrant dismissal at this stage because "superficial differences in agency responses should not defeat a policy-or-practice claim." *ACLJ II*, 470 F. Supp. 3d at 7. The court therefore concludes that the six FOIA requests under Count II are sufficiently related—both in their substance and the responses they generated—to form a pattern.

### 3.    Whether DOJ's policy or practice violates FOIA

The final question is whether the above pattern forms a "policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt II*, 926 F. Supp. 2d at 293 (quoting *Payne Enters.*, 837 F.2d at 491). At the motion-to-dismiss stage, CREW need only plead sufficient

facts to suggest that DOJ has "adopted, endorsed, or implemented" such a policy.  *Id.*  CREW has cleared this hurdle.

DOJ argues that a policy must be "sufficiently outrageous" for it to be actionable.  ECF No. 8-1, at 8.  This terminology, however, derives from the district court opinion that was later reversed in *Payne Enterprises*.  *See* 837 F.2d at 494 ("The District Court concluded [that] . . . the [agency]'s failure . . . to abide by the letter and spirit of the FOIA was . . . not sufficiently outrageous to warrant a court order." (citing *Payne Enters., Inc. v. United States*, No. 86-CV-1987 (D.D.C. Nov. 17, 1986))).  In disagreeing with the district court's characterization of the challenged conduct, the D.C. Circuit did not repeat or endorse the "outrageous" standard.  *See generally id.*  While the facts of *Payne Enterprises* were indeed extreme—agency officers repeatedly invoked the same exemptions for roughly two years despite the Secretary of the Air Force's consistent instructions to the contrary—that case did not "establish[] a floor for a policy or practice claim." *Judicial Watch*, 895 F.3d at 781; *see Payne Enters.*, 837 F.2d at 487.  Further undermining DOJ's position, the Circuit expressly "d[oes] not require egregious agency action to state a policy or practice claim."  *Judicial Watch*, 895 F.3d at 781.  Instead, a plaintiff may be able to prevail by showing "some *other* failure to abide by the terms of the FOIA" beyond a mere "refusal to supply information."  *Id.* at 782-83 (quoting *Payne Enters.*, 837 F.2d at 491).

Here, CREW has alleged sufficient facts to survive a motion to dismiss on Count II.  It asserts that four DOJ components consistently provide *Glomar* responses whenever CREW seeks records relating to a publicly disclosed investigation of a third party.  ECF No. 1 ¶ 43.  CREW supports this assertion with exhibits of six FOIA responses, ECF Nos. 1-9 through 1-14, several of which use identical language despite coming from different components, ECF Nos. 1-9, 1-12,

1-13.  None of the responses indicated that pertinent documents existed, and each relied on FOIA

Exemptions 6 or 7(C).  *See* ECF Nos. 1-9 through 1-14.

    CREW convincingly argues that this categorical approach "is contrary to binding precedent."

ECF No. 10, at 11.  In *Citizens for Responsibility & Ethics in Washington v. U.S. Department of

Justice*, 746 F.3d 1082 (D.C. Cir. 2014) ("*CREW I*"), the D.C. Circuit held that *Glomar* responses

to requests for investigative records are generally not appropriate when the existence of an

investigation is already public knowledge.  *Id.* at 1091.  This is because *Glomar* responses are

proper "only when confirming or denying the existence of records would *itself* 'cause harm

cognizable under a[] FOIA exception.'"  *Id.* (emphasis added) (quoting *Roth v. U.S. Dep't of Just.*,

642 F.3d 1161, 1178 (D.C. Cir. 2011)).[9]  In *CREW I*, as in this case, DOJ and its components

premised their *Glomar* responses on Exemption 7(C).  *See CREW I*, 746 F.3d at 1090-91.  In this

case, DOJ additionally invoked Exemption 6 in some of its responses, but both provisions concern

whether disclosure would result in an "unwarranted invasion of personal privacy."   5 U.S.C.

---

[9] DOJ specifically contests the application of the *CREW I* principle to any investigation of Rudy Giuliani. ECF No. 8-1, at 16. Specifically, it argues that CREW "cite[d] a single article that offers only *speculation* as to the existence of any investigation," *id.* at 16-17 (emphasis added), and that "[a]n individual's privacy interest is not extinguished merely because the media reports or the public speculates that the individual may have been the subject of an investigation," *id.* at 16 (quoting *Bartko v. U.S. Dep't of Just.*, 62 F. Supp. 3d 134, 143 (D.D.C. 2014)).  That may be true, but *some* public knowledge of an investigation at least diminishes the investigation target's privacy interests and would require a more searching inquiry into the applicability of FOIA exemptions. In that scenario, the blanket policy that CREW alleges would still be inappropriate.

§§ 552(b)(6) & (7).  If DOJ simply assumes that these exemptions apply to all records concerning publicly disclosed investigations into third parties, that assumption likely contravenes *CREW I*.[10]

DOJ argues that a ruling in CREW's favor would "impose an obligation that all DOJ components coordinate and maintain uniformity in their practices for responding to FOIA requests—something that is clearly not contemplated by the applicable regulations." ECF No. 8-1, at 13-14.  But the only "obligation" the court would impose (assuming that it eventually agrees with CREW on the merits) is requiring the entire DOJ to comply with FOIA—something it should already be doing.  CREW is not asking for the agency and its components to respond to every request identically; it merely asks that they follow the law when doing so.  Each DOJ component can still employ its own unique procedures for handling document requests as long as those procedures abide by FOIA's requirements.

Because CREW has shown that several different DOJ components replied to its FOIA requests for records concerning publicly disclosed investigations in the same way, it has plausibly alleged a "policy or practice of . . . [a] failure to abide by the terms of the FOIA."  *Payne Enters.*, 837 F.2d at 491.  Whether such a policy indeed exists is a question for a later stage of this case, and DOJ will have an opportunity to present its evidence to the contrary.  CREW, however, has carried its burden at the motion-to-dismiss stage.

---

[10] It is certainly possible that—upon closer inspection—actually disclosing the requested records would violate privacy interests.  This is because the targets of publicly disclosed investigations still "retain[] a second, distinct privacy interest in the *contents* of the investigative files."  *CREW I*, 746 F.3d at 1092; *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998) (explaining that the target of a publicly disclosed investigation still retains a "privacy interest . . . in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment").  But regardless of how the requests are eventually resolved, DOJ cannot justify a categorical policy of issuing *Glomar* responses to any FOIA request for records concerning a publicly disclosed investigation in the first instance.

### B.    Count III

Both parties recognize that Counts II and III share many analytical themes.  *See* ECF No. 8-1, at 18 ("Plaintiff's Count III claim fails for many of the same reasons as its Count II claim."); ECF No. 10 ("For similar reasons as Count II, Count III plausibly alleges a policy and practice of categorical denials of requests relating to investigations of public officials[.]").  Count III, however, alleges a policy-or-practice claim only against a single component (the FBI) and focuses on three different responses (concerning Secretary Zinke, Arizona State Senator Mark Finchem, and Congressman Matt Gaetz).

DOJ first argues that CREW's three requests for investigative records pertaining to Mr. Zinke, ECF No. 8-7, Mr. Finchem, ECF No. 8-8, and Mr. Gaetz, ECF No. 1-5, are too dissimilar to form any sort of pattern, ECF No. 8-1, at 18-19.  This argument largely mirrors its argument about Count II and fails for the same reasons.  As explained previously, *supra* Part IV.A.2, "superficial differences in agency responses should not defeat a policy-or-practice claim," *ACLJ II*, 470 F. Supp. 3d at 7, and requests about separate targets of government investigations are not sufficiently different in kind, *see Judicial Watch*, 895 F.3d at 776 (grouping together travel-record requests for President Obama, First Lady Michelle Obama, Vice President Biden, and former President Carter).

DOJ's next argument, however, is much more persuasive.  DOJ asserts that the *responses* to CREW's three requests were not uniform, thereby dooming Count III.  ECF No. 8-1, at 19-21.  The court agrees.  The thrust of CREW's claim is that the FBI did not conduct a case-by-case analysis in response to each request.  But the exhibits of the FBI's responses—which the court may consider at this stage because CREW attached them to its complaint, *see N. Am. Butterfly Ass'n*, 977 F.3d at 1249—belie this claim.  Specifically, in response to the request for Mr. Finchem, the FBI acknowledged that the records existed but explained that the requests "are categorically denied

pursuant to FOIA exemptions (b)(6) and (b)(7)(C)" because CREW "ha[d] not sufficiently demonstrated that the public's interest in disclosure . . . outweigh[ed] the personal privacy interests of an individual." ECF No. 1-17, at 1. The FBI also invoked Exemption 7(A), which exempts law enforcement records if their production "could reasonably be expected to interfere with enforcement proceedings." *Id.* (quoting 5 U.S.C. § 552(b)(7)(A)). It elaborated that there was "a pending or prospective law enforcement proceeding relevant to the[] responsive records" that prevented their disclosure. *Id.*

The FBI took a different tack in responding to CREW's two other requests. In response to the Gaetz request, the FBI "completed [a] search for records," "acknowledged" that responsive documents existed, and explained that CREW's request was "categorically denied pursuant to FOIA exemptions (b)(6) and (b)(7)(C)." ECF No. 1-7, at 1. The FBI did not invoke Exemption 7(A), suggesting that it had examined and recognized differences between the two requests.[11] And in response to the Zinke request, the FBI did not issue an initial denial and instead instructed CREW to "complete[], sign[], and return[]" an enclosed "Privacy Waiver and Certification of Identity Form" if it wanted access to the records. ECF No. 1-16, at 1.

In stark contrast to the six responses under Count II, the three responses under Count III appear far too varied to support a policy-or-practice claim. At best, only two responses (regarding Mr. Finchem and Mr. Gaetz) share themes in that both relied on Exemptions 6 and 7(C) and contained similar language. But even if these two responses were sufficiently similar, the court

---

[11] Under Count II, the court saw little daylight between the varied invocations of Exemptions 6 and 7(C). But that is because Exemptions 6 and 7(C) both safeguard against "unwarranted invasion[s] of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(A), however, is based on an entirely different rationale. *Id.* § 552(b)(7) ("interfere[nce] with [law] enforcement proceedings").

expresses serious doubt as to whether only two separate instances could amount to a detectable pattern. *See Khan*, No. 22-CV-2480, 2023 WL 6215359, at *7.

In its opposition, CREW relies heavily on a presentation deck posted on DOJ's website containing a slide that reads: "[g]enerally, an agency can issue a . . . categorical denial without first conducting a search." ECF No. 10, at 25-26, 28-29. CREW argues that "[a]t a minimum, the presentations strongly reinforce the existence of the challenged agency-wide policy and practice." *Id.* at 26. While this may be suggestive of a broader policy, it is not framed as a strict mandate; the guidance does not say, for example, that agencies can categorically deny requests without searches in *every* case. Additionally, the guidance is in tension with the actual responses that CREW received, one of which expressly states that the FBI conducted a search, ECF No. 1-7, and all three of which either explicitly acknowledged or heavily implied that responsive records existed, ECF Nos. 1-7, 1-16, 1-17. By communicating the existence of certain documents, the FBI tacitly admitted that it had attempted a search. At most, the slide deck recommends a "[g]eneral[]" approach that the FBI did not blindly follow here. CREW's reliance on it is therefore less persuasive than CREW would like it to be.

CREW also argues that a "categorical denial in . . . cases [involving investigations of government officials] is *per se* inappropriate." ECF No. 10, at 28; *see Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 854 F.3d 675, 683-84 (D.C. Cir. 2017) ("*CREW II*") ("Because the myriad of considerations involved in the Exemption 7(C) balance defy rigid compartmentalization, per se rules of nondisclosure based upon the type of document requested, the type of individual involved, or the type of activity inquired into, are generally disfavored." (quoting *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91 (D.C. Cir. 1984))). While there is some truth to this, it tends to overstate the rule. Both the Supreme Court and the D.C. Circuit have explained that a

categorical approach to FOIA requests is only appropriate if "a case fits into a genus in which the balance [of private and public interests] *characteristically* tips in one direction." *CREW I*, 746 F.3d at 1095 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989)). Put differently, a categorical approach can only be used in situations where the balance usually favors disclosure or nondisclosure. *See id.* The D.C. Circuit has ruled out such an approach in other investigative contexts because investigations of potentially criminal conduct by public figures generally do not "tip [in favor of] withholding." *Id.* (quoting *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998)); *see id.* at 1095-96 (rejecting the categorical nondisclosure of investigative files involving former House Majority Leader Tom DeLay); *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 895 (D.C. Cir. 1995) (rejecting a categorical *Glomar* approach for "investigative information pertaining to third parties" because the agency's rule did not "characteristically support" nondisclosure). Instead, the Circuit has endorsed a "case-by-case balancing" method that considers "the rank of the public official involved and the seriousness of the misconduct alleged." *CREW I*, 746 F.3d at 1095 (quoting *Kimberlin*, 139 F.3d at 949). While the Circuit has not held that this framework applies to *all* investigative contexts, it is likely that categorical denials for records concerning publicly disclosed investigations are inappropriate. And if CREW were to level that charge in a suit directed at a specific withholding (like it does with Count I here), it may very well prevail. But that is a *different* legal question from whether the FBI has an established policy or practice of issuing across-the-board categorical denials for every request for records concerning a publicly disclosed investigation. Based only on the three examples available in the record, the court cannot conclude that CREW has sufficiently pled this claim.

## V.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No. 8, is **GRANTED** in part and **DENIED** in part, and Count III of Plaintiff's Complaint, ECF No. 1, is **DISMISSED**.  Defendant shall file an answer to Counts I and II on or before April 4, 2025.  Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 21, 2025